THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ARCH YERMAN, Appellant.

County Court, Oneida County, November 8, 1930.

*Edward A. Wolff*, for the appellant.

*Francis J. Lawler, Corporation Counsel*, for the People, respondent.

HAZARD, J.   Although the defendant pleaded guilty in this case, and has paid the small fine imposed, he has taken this appeal, and in it, and in the brief filed by his attorney upon the argument, has raised about all the questions that could possibly be involved in a criminal case.   *First*, the claim is made that he was arrested illegally without a warrant.   It is true that no warrant was ever issued for the defendant.   However, it appears that the crime, if we may thus seriously designate a traffic violation, was committed in an officer's presence; and, *second*, that the officer did *not* arrest the defendant.   He simply told him that he should appear in the City Court of Rome the following morning.   While it may be true that such a procedure has about all the binding force of a " royal invitation "— in other words, of a command — I do not think that it amounted to an arrest, as that procedure is defined by sections 167–171 of the Code of Criminal Procedure.   On appellant's own statement, he went to the police station the next morning " on his way to work."   It has been held in numerous cases similar to this that a warrant is not essential; and that when a defendant is either brought into court or voluntarily appears there is no occasion for preparing one.   (*People* v. *Markowitz*, 119 App. Div. 841; *People* v. *Burns*, 19 Misc. 680; *People* v. *Jeratino*, 62 id. 587; *People* v. *Mulkins*, 25 id. 599.)

The next point we will consider is the much more serious one, viz., that there was never a written information or deposition in this case.   It is claimed by the appellant that the failure to prepare such a document was jurisdictional.   Many cases are to be found touching more or less directly upon this subject and not always to the same effect, although I think it is perhaps possible to reconcile them by drawing an imaginary line between those cases on the one hand of simple and trivial misdemeanors which have their inception in court when an officer brings a culprit before the court for a crime committed in the officer's presence; and, on the other hand, those cases in which a criminal action is started by complaint made to a court by someone.   In the former line of cases no warrant is ever issued, and none is needed.   In the latter cases there doubtless must be both an information and a warrant, and perhaps a deposition also.   The case we are considering comes very clearly within

the line first above mentioned. When defendant appeared in court he was told in considerable detail what the charge was, and, after some hesitation, *he pleaded guilty thereto*. This procedure is attacked upon this appeal as being irregular; and it is claimed to be so irregular that the City Court of Rome had no jurisdiction. Therefore, it becomes necessary to decide this question. It has been held in a situation like this that by pleading guilty to the oral complaint the defendant has waived the making of any written complaint or deposition. (*People* v. *Burns*, 19 Misc. 680; *People ex rel. Farley* v. *Crane*, 94 App. Div. 397, 400; *People ex rel. Wojek* v. *Henderson*, 134 Misc. 228.) It has been said that a written information " does not seem to be expressly required by the Code of Criminal Procedure." (*People* v. *Bell*, 31 N. Y. Crim. 370.) So, also, a defective information is held waived and jurisdiction conferred by pleading and standing trial. (*Matter of Blum*, 9 Misc. 571; *People* v. *Winness*, 3 N. Y. Crim. 89.) Also, it is held that where a defendant goes through a trial without demurrer or objection, he cannot attack the complaint for the first time on appeal. (*People* v. *Wiechers*, 179 N. Y. 462.) It is held that it is not necessary that an information should be in existence at the time when the defendant is first taken before the magistrate. (*People* v. *Ostrosky*, 95 Misc. 104, 107.)

There are a considerable number of cases in which it is held that a complaint is essential; but I think they all come within the second category mentioned above, or are cases in which the defendant pleaded not guilty and stood trial. Thus, considering one of the most cogent of these cases (*People* v. *James*, 11 App. Div. 609), we find (on p. 612) that " before a party *is placed on trial* in a Court of Special Sessions or a Police Court, he should be charged by an information, clear and definite, and the charge should be followed by a warrant specifically stating the crime alleged." The emphasis is mine; but I think the language clearly differentiates the case at bar from a case in which a trial was to occur; and I believe the practice is warranted in a case like this in dispensing with both a warrant and a written complaint. This position seems logical. When a defendant is brought into court or appears in court and learns that some trivial charge like the violation of an ordinance is made against him, and he announces that he is willing to and does plead guilty thereto, no reason in the world would seem to exist for the preparation of a formal warrant or formal written information. I believe that this practice has obtained in thousands of cases throughout the State in Police Courts; and I am unwilling to hold that it is illegal. Nor are we without authority on this point. In a case in this department (*People* v. *Carter*, 88 Hun, 304) the

court in discussing the effect of section 699 of the Code of Criminal Procedure (the only section of the Code which bears directly upon that point) said that although the section in question says "the charge must be distinctly read to him,   *   *   *   still, we are of the opinion that an omission to reduce the. charge to writing does not deprive the magistrate of jurisdiction, and where, as in this case, the defendant is brought before a magistrate, and without any other action on his part pleads guilty to an oral charge, the requirements of section 699 are waived, and his conviction should not be reversed because the charge was not reduced to writing." Furthermore, upon the same subject, the court in *People ex rel. Farley* v. *Crane* (94 App. Div. 400) said: " If the examination is to be proceeded with at once doubtless the prisoner may waive this requirement, [a written information], but if it is to be adjourned and he is to be committed pending the examination, it is manifest that a proper information in writing must be filed with the magistrate to give him jurisdiction to issue the commitment." A crucial case in that connection is *People* v. *Park* (92 Misc. 369) in which many of the cases on the subject are discussed, and it is held that the jurisdiction of the court does not depend upon the existence of a warrant or a written information. In the case at bar the defendant, as appears by the stenographer's record, was with considerable particularity informed of the nature of the charge against him. He was not informed of his alleged right to counsel, and that omission is claimed to constitute an error. The requirement with reference to informing the defendant of his right to aid of counsel is to be found in section 188 of the Code of Criminal Procedure, and it has been held that that section, being a part of part IV of the Code which has to do with " the· proceedings in criminal actions prosecuted by indictment," has no application to cases in Special Sessions. (*People* v. *Cook,* 45 Hun, 34; *People* v. *Griessman,* 149 N. Y. Supp. 63; *People* v. *Johnston,* 187 N. Y. 319.) Furthermore, and aside from the technicalities involved, there would seem to be no good reason why a defendant who stands ready to, and does, plead guilty upon being informed of the nature of the charge against him, needs to be advised that he is entitled to aid of counsel.

Another contention on the part of the defendant is that he could not be convicted upon a plea of guilty without " proof of the *corpus delicti.*" This contention is utterly untenable and seems to have grown out of some confusion in the mind of counsel between a confession and a plea of guilty. No case can be found holding that there must be proof of anything, after a plea of guilty is made.

We now come to the contention of the appellant, raised by his amended specifications, the purport of which is that while appellant

was convicted under article 2 of section 19 of the Rome Traffic Ordinances, there is in fact no such ordinance; and with reference thereto he makes four specifications: *First,* that the said alleged ordinance was never legally presented to the common council of the city of Rome. *Second,* that it was never in fact voted on or adopted by the said common council. *Third,* that it was in fact never presented to the mayor for signature or veto, and was never signed by him, and never filed and recorded as required by section 34 of the charter of the city of Rome (Laws of 1921, chap. 679). *Fourth,* that said alleged ordinance has never been filed in the office of the Secretary of State as is required by section 288 of the Highway Law (repealed by Laws of 1929, chap. 54). It has been said that municipal ordinances " passed in pursuance of authority from the legislature have the force of law and are as obligatory as if enacted by the legislature itself." (*City of Buffalo* v. *N. Y., L. E. & W. R. R. Co.*, 152 N. Y. 276.) In that case the court, among other things, said: " Nor is there any doubt with respect to the fact that the governing body of the city enacted the ordinances and promulgated them in such form as to become binding upon the defendant." I quote that language to show the difference between that case and the one at bar, as in this case there seems to be grave questions as to whether the ordinance in question for the violation of which the defendant has been convicted, was ever either legally adopted or promulgated. Of course, if it was not, the whole structure of this case must fall. The question remains how such a point can be got before this court. It is provided by section 763 of the Code of Criminal Procedure that the appeal must be heard upon the original return. The case presents some difficulties, because there is nothing in the original return in this case bearing upon the subject of the legality or the illegality of the traffic ordinance in question, and particularly as to whether it was ever legally adopted or not; and it is not apparent how anything can be got into the return upon that subject. There is a copy of the ordinance or the section involved in the return; but it does not, and naturally cannot be made to go into the subject of the procedure followed by the common council of the city of Rome in the adoption of that traffic ordinance. We thus have a situation which apparently is not provided for in the Code of Criminal Procedure. I think it is quite analogous to a situation which *is* provided for by the Justice's Court Act in civil appeals, by section 455 thereof. The situation is somewhat perplexing, but it seems clear to me that if it can be shown that the ordinance under which this conviction was had is not legally in force, the conviction must fall; and there must be some way of presenting that question. After considerable deliberation, I decided to follow the pro-

cedure established in civil cases and above referred to, and upon notice to the appellant, the corporation counsel of the city of Rome, and the city judge of Rome, a hearing was had before me and evidence taken upon the subject. It transpires that the traffic ordinance in question was in fact, at least as appears from the official records of the city of Rome, introduced at a meeting held on May 7, 1928, *after the meeting had in fact adjourned.* This, of course, would be a serious defect except for the fact that I think it was cured by an action of the council at the following meeting on May 24, 1928, at which the following appears: " Motion by Ald. Wunsch that the Common Council give its unanimous consent to act on Traffic Ordinance at this meeting. Seconded by (Ald.) Abbott. Adopted unanimously on roll call." This action presumably cured the defective presentation of the ordinance; but it surely does not and cannot amount to an *adoption* of the ordinance; and yet it seems to be a fact that there is no record anywhere, official or otherwise, that the ordinance in question was ever voted upon by way of adoption. It will be observed that the resolution referred to simply gives permission to " act on " the traffic ordinance. That surely does not amount to taking action on the ordinance. It was a preliminary step doubtless made necessary by a requirement of the charter that an ordinance could not be adopted at the same meeting at which it was presented, without unanimous consent. That the resolution in question simply gave consent to act on the ordinance does not, I think, admit of argument. Clearly any alderman might have voted " aye " on the resolution above quoted, and then voted against the ordinance — if he were given a chance. The then city clerk testified before me that " according to the best of his recollection " the ordinance was put to a vote and was carried, thereby adopting it. I do not consider that so serious a matter as a traffic ordinance which carries with it the possibility of imprisonment to those violating its terms, should rest upon so weak a foundation as the recollection of some official. Furthermore, I think *it cannot* rest upon any such a foundation, and meet the requirements of the charter of the city of Rome. This charter is chapter 679 of the Laws of 1921, and section 31 of it provides: "All the legislative acts of the common council shall be by ordinances, and upon the passage of every ordinance, the *yeas and nays of the members voting thereon shall be entered in full upon the journal.* The passage of an ordinance shall require the affirmative vote of at least a majority of all the members of the common council except as herein otherwise provided. No ordinance shall be passed by the common council on the same day in which it is introduced, except by unanimous consent."

The witness Gurley upon the stand admitted that there was no record of the vote cast upon this resolution, or that any vote was cast; and I think that upon that admission, and upon the record as it in fact appears, it must be decided that the so-called Rome Traffic Ordinance had no legal inception, in that it was never adopted by the common council of the city of Rome. At any rate, there is concededly no legal proof that any such action was taken. This makes it unnecessary to consider the further specifications raised upon this appeal, as it would seem clear that a conviction resting upon an ordinance which was never legally adopted cannot stand. It has been held that the "burden was on the people to show that all the formalities necessary to make the proposed ordinance effective had been complied with." (*People* v. *Chapman*, 88 Misc. 469, 472.)

This decision perhaps renders unnecessary, if not improper, a consideration of another point raised by the appellant, viz., that the ordinance is in contravention of the terms of section 288 of the Highway Law, which was in force at the time the ordinance in question was *supposed* to have been adopted. Rome is a city of the third class, and the rather serious question arises as to whether it had the power to make local ordinances under the law as it then existed, which ordinance assumed to establish traffic regulations.

There is considerable authority for the proposition that it had no such power, and was limited strictly to the provisions of section 288 of the Highway Law. (*People* v. *Braun*, 100 Misc. 343; *City of Buffalo* v. *Lewis*, 192 N. Y. 193, at p. 199; *People* v. *Gorman*, 133 Misc. 161; Report of the Attorney-General for 1926, 257; Opinions of the Attorney-General for 1914, 149.)

Section 288 of the Highway Law was repealed by chapter 54 of the Laws of 1929, and hence it is probably not particularly important to pass upon the point in question.

Judgment reversed.