Application of Burton N. PUGACH for a Writ of Habeas Corpus on behalf of Burton N. Pugach, Petitioner,

v.

Milton KLEIN, Warden of Bronx County Prison, Respondent.

Application of Burton N. PUGACH, Petitioner, for an order of mandamus

v.

Hon. Morton S. ROBSON, United States Attorney for the Southern District of New York, Respondent.

Application of Burton N. PUGACH, Petitioner, for Warrants for the Arrest of Frank Weldon, Alexander Scheer and Hon. Joseph Martinis, and for a Search Warrant for the premises occupied by Hon. Isidore Dollinger, Bronx County District Attorney, at 851 Grand Concourse, Borough of Bronx, City of New York.

United States District Court
S. D. New York.
April 11, 1961.

Frances Kahn, New York City, for petitioner.

Morton S. Robson, U. S. Atty., for Southern District of New York, New York City, for the United States. James McKinley Rose, Jr., Asst. U. S. Atty., New York City, of counsel.

MacMAHON, District Judge.

These applications by Pugach for habeas corpus, mandamus, and warrants for arrest and search raise once again the vexing question of whether a federal court ought to interfere at the preliminary stage of a state criminal prosecution allegedly resulting from wire tap evidence obtained in violation of the Federal Communications Act, 47 U.S.C.A. §§ 501, 605, but in compliance with the clashing law of the State of New York. N.Y.Const. art. I, § 12; N.Y.Penal Law § 738 (McKinney 1960); N.Y.Code of Criminal Procedure § 813–a (McKinney 1960).

In pertinent part, Section 605 provides: " * * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * * ." Section 501 makes wilful violation a misdemeanor.

The problems involved here have their origin in statements made by the Supreme Court in Benanti v. United States, 1957, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed. 2d 126, and Schwartz v. State of Texas, 1952, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231, to the effect that tapping coupled with divulgence, even when done by state agents pursuant to state law, was a violation of Section 605 enforceable by the United States under the penal provision of Section 501.

The impact of those cases on a state criminal proceeding was considered extensively, but in different context, in an earlier, but unsuccessful attempt by this petitioner to enjoin the use of such evidence on his long delayed, but now imminent, trial under an indictment by a Bronx County Grand Jury on serious charges based on the alleged lye-maiming of a young lady. See Pugach v. Sullivan, D.C.S.D.N.Y., 180 F.Supp. 66, stay granted sub nom. Pugach v. Dollinger, 2 Cir., 1960, 275 F.2d 503, affirmed 2 Cir., 1960, 277 F.2d 739, stay granted, 2 Cir., 1960, 280 F.2d 521, affirmed 81 S.Ct. 650, 5 L.Ed.2d 678.

Pugach is now a state prisoner lodged without bail in the Bronx County jail pending trial on April 11, 1961. He is a disbarred lawyer but appears here by counsel of his own selection. All of these applications, with minor variations, are based on the same allegations. It will serve convenience and avoid repetition to consider the petition for mandamus first.

### Mandamus

Petitioner seeks, by original petition for a writ of mandamus, to compel the United States Attorney to prosecute an officer of the New York City Police Department, an Assistant District Attorney, and a County Judge.

The petition, largely by resort to conclusions, purports to allege violations of, and conspiracy to violate, Sections 501 and 605 of the Communications Act of 1934, 47 U.S.C.A., in that agents of the Bronx County District Attorney and the New York police obtained an order from the State Supreme Court authorizing them to intercept petitioner's telephone conversations, used information "resulting from such interceptions," caused tapes to be made and divulged their contents and meaning both to newspapers and to the Bronx County Grand Jury, thereby causing his arrest, indictment and detention. The Judge is accused of aiding and abetting, resisting arrest, withholding evidence and remaining a fugitive.

Asserting the imminence of the trial, open defiance by New York of the wire tap prohibitions of the Communications Act, and failure of the District Attorney and the United States Attorney to enforce violations, notwithstanding admonitions by Judge Waterman of the Court of Appeals for this circuit, Pugach contends that there is no existing state process to protect "his rights." He specifically alleges refusal of the United States Attorney to act on his complaints, made once on December 15, 1959 and again on March 20, 1961, when he asked him to appear in Bronx County to perform his duty to assist Pugach in effecting a citizen's arrest and impound the wire tapes and their fruits, and still again on March 21, 1961, when he asked him to take the persons "arrested" into custody and to impound the evidence. Finally, Pugach asserts that the United States Attorney has acted arbitrarily and capriciously thereby causing state officers openly to defy and flout the sovereignty of the United States, all to petitioner's great personal suffering.

The Court ordered the United States Attorney to show cause why a writ should not be granted. He appeared on the return day and moved to dismiss the petition on the ground that the Court

lacks jurisdiction. The motion is well founded. It is clear beyond question that the Court lacks jurisdiction. District Courts derive their power and jurisdiction from the Judiciary Acts, 62 Stat. 869 (1948), 28 U.S.C.A. Congress has never seen fit to confer general jurisdiction upon the lower federal courts to issue original writs of mandamus.

As early as 1813, the Supreme Court held that the lower federal courts were not given the power to issue original writs of mandamus, but could grant such relief only in aid of jurisdiction otherwise acquired. McIntire v. Wood, 1813, 7 Cranch 504, 11 U.S. 504, 3 L.Ed. 420.

In 1906, the court said that neither the Judiciary Act of September 24, 1789, 1 Stat. 73, nor the Acts of March 3, 1875, 18 Stat. 470, and March 3, 1887, 24 Stat. 552, had conferred jurisdiction on the lower federal courts to entertain original suits in mandamus. Covington & Cincinnati Bridge Co. v. Hager, 1906, 203 U.S. 109, 27 S.Ct. 24, 51 L.Ed. 111. Any lingering doubt as to lack of such power vanished with the adoption of Rule 81(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which specifically abolishes writs of mandamus. Nor does the 1948 revision of the Judicial Code, 28 U.S.C.A., enlarge jurisdiction in this respect.[1] United States ex rel. Vassel v. Durning, 2 Cir., 1945, 152 F.2d 455; Fredericks v. Rossell, D.C.S.D.N.Y.1950, 95 F.Supp. 754; Marshall v. Wyman, D.C.N.D.Cal. 1955, 132 F.Supp. 169.

Even if by some stretch of the imagination this petition were deemed to seek ancillary relief, the Court would still be compelled to deny it. With all deference to the concern of some over the lack of prosecutions against state officers for wire tapping in accordance with state law, it is, nevertheless, clear beyond question that it is not the business of the Courts to tell the United States Attorney to perform what they conceive to be his duties.

Article II, Section 3 of the Constitution, provides that "[the President] shall take Care that the Laws [shall] be faithfully executed." The prerogative of enforcing the criminal law was vested by the Constitution, therefore, not in the Courts, nor in private citizens, but squarely in the executive arm of the government. Congress has implemented the powers of the President by conferring the power and the duty to institute prosecution for federal offenses upon the United States Attorney for each district. 28 U.S.C.A. § 507. In exercising his power, the United States Attorney acts in an administrative capacity as the representative of the public. His power, assuming arguendo the validity of the premise that criminal violations are shown here, is expressly reinforced by the Communications Act, 47 U.S.C.A. § 401(c).

It by no means follows, however, that the duty to prosecute follows automatically from the presentation of a complaint. The United States Attorney is not a rubber stamp. His problems are not solved by the strict application of an inflexible formula. Rather, their solution calls for the exercise of judgment. Judgment reached primarily by balancing the public interest in effective law enforcement against the growing rights of the accused.

There are a number of elements in the equation, and all of them must be carefully considered. Paramount among them is a determination that a prosecution will promote the ends of justice, instill respect for the law, and advance the cause of ordered liberty.[2] Here, respect for, and cooperative relations with, state law enforcement agencies weigh heavily in the scale.

1. It should be noted that Section 401 of Title 47 U.S.C.A. gives district courts jurisdiction to issue a writ of mandamus to compel compliance with the Communications Act upon application of the Attorney General of the United States, at the request of the Commission. Manifestly, the conditions precedent to the exercise of such power are absent here.

2. See, Wickersham "The Supreme Court and Federal Criminal Procedure," 44 Cornell L.Q. 14 (1958).

Surely it is for the United States Attorney to decide whether the public interest is better served by prosecuting or declining to prosecute state law enforcement agencies and besmirch a Judge on the eve of a trial on the feeble complaint of an accuser infected with self-interest in escaping trial on a grave charge. The reason for leaving the choice with the United States Attorney is all the more compelling in an area such as this, riven with controversy, frought with friction, and confused by clashing law.[3]

Other considerations are the likelihood of conviction, turning on choice of a strong case to test uncertain law, the degree of criminality, the weight of the evidence, the credibility of witnesses, precedent, policy, the climate of public opinion, timing, and the relative gravity of the offense. In weighing these factors, the prosecutor must apply responsible standards, based, not on loose assumptions, but, on solid evidence balanced in a scale demanding proof beyond a reasonable doubt to overcome the presumption of innocence. Just how thoroughly cases are screened to meet these basic criteria is reflected in the fact that 97% of all prosecutions commenced in this district end either in a plea of guilty or conviction after trial.[4]

Still other factors are the relative importance of the offense compared with the competing demands of other cases on the time and resources of investigation, prosecution and trial. All of these and numerous other intangible and imponderable factors must be carefully weighed and considered by the conscientious United States Attorney in deciding whether or not to prosecute.

■ All of these considerations point up the wisdom of vesting broad discretion in the United States Attorney. The federal courts are powerless to interfere with his discretionary power.

The Court cannot compel him to prosecute a complaint, or even an indictment, whatever his reasons for not acting. The remedy for any dereliction of his duty lies, not with the courts, but, with the executive branch of our government and ultimately with the people. Milliken v. Stone, D.C.S.D.N.Y.1925, 7 F.2d 397, affirmed 2 Cir., 16 F.2d 981, certiorari denied 1927, 274 U.S. 748, 47 S.Ct. 764, 71 L.Ed. 1331. See United States v. Woody, D.C.D.Mont.1924, 2 F.2d 262.

■ Nor is there a residual power in private citizens to take law enforcement into their own hands when the United States Attorney does not prosecute, for any, or for no reason. United States v. Brokaw, D.C.S.D.Ill.1945, 60 F.Supp. 100; United States v. Stone, C.C.W.D. Tenn.1881, 8 F. 232, 261. The rights petitioner seeks to vindicate here are not his private rights, as in Reitmeister v. Reitmeister, 2 Cir., 1947, 162 F.2d 691, but the right of the United States to enforce its criminal laws. Pugach v. Dollinger, 2 Cir., 1960, 277 F.2d 739, 743, 744, affirmed 81 S.Ct. 650, 5 L.Ed.2d 678; 47 U.S.C.A. § 401(c); United States v. Gris, 2 Cir., 1957, 247 F.2d 860.

### Arrest

Nevertheless, petitioner has attempted to arrogate to himself the executive prerogative of enforcing the law. He asserts that on March 20, 1961 he made a citizen's arrest of the police officer and the assistant district attorney in Bronx County Court House "for the crimes of conspiracy and violation of Section 501" and demanded that they be brought forthwith before a United States Commissioner for arraignment. He also demanded that the Judge impound material evidence, consisting of the indictment, "wiretap order," grand jury minutes, wire tapes and the record of what the police officer divulged to court, jury and

3. "No problem is more perplexing, the source of more legal confusion, or more laden with controversy." S.Rep. No. 1478, 85th Cong., 2 Sess. 28 (1958). Brown, "The Great Wiretapping Debate and the Crisis in Law Enforce-

ment." New York Law Forum, July 1960, Vol. VI, No. 3, pp. 265–282.

4. Annual Report of the United States Attorney for the Southern District of New York for the period June 1, 1959, to May 31, 1960, p. 8.

spectators at Bronx County Court on March 2, 1960. The officers allegedly resisted arrest and remain fugitives, and the Judge refused to impound the "articles of contraband" and continued proceedings,[5] whereupon Pugach "did arrest" the Judge "for aiding and abetting." The Judge, Pugach claims, resisted arrest, withholds evidence, aids and abets in the commission of a crime, and remains a fugitive in violation of his duties under "the supremacy clause," Article VI, Clause 2, of the Constitution.

In the absence of controlling federal law, the validity of Pugach's attempted civilian arrest must be determined by the law of New York. Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

Under Section 167 of the New York Code of Criminal Procedure, "Arrest is the taking of a person into custody that he may be held to answer for a crime." Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. requires that " * * * any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available Commissioner * * *."

Necessarily, therefore, the first requisite to a valid arrest is to take custody. This means enough dominion and control over a person to be able to take him before the Commissioner. Mere utterance of words indicative of an arrest is, therefore, not enough. People v. Yerman, 1930, 138 Misc. 272, 246 N.Y. S. 665.

There is not even a hint in the affidavit before the Court that any of the persons described were ever in the custody of Pugach, either actually or constructively. Indeed, he did not even lay hands on any of them, nor detain them, nor in any way control or restrain their liberty. Plainly, therefore, the attempted arrest was ineffective. See Bolger v. United States, D.C.S.D.N.Y.1960, 189 F. Supp. 237, 251; Worden v. Davis, 1909, 195 N.Y. 391, 88 N.E. 745, 22 L.R.A., N.S., 1196.

Pugach contends, however, that because he was in custody himself, he was unable to take custody and, therefore, that the usual rule does not apply. In my view, there is no such exception, but assuming the validity of the contention, there was no basis here for a citizen's arrest in any event. New York law provides that "A private person may arrest another (1) for a crime committed or attempted in his presence; (2) when the person arrested has committed a felony, although not in his presence." § 183, New York Code of Criminal Procedure.

A violation of § 501 of the Communications Act is a misdemeanor, 18 U.S.C.A. § 1. Assuming, for the moment, that such a misdemeanor were committed, there is still nothing in the affidavit showing that it was committed by anyone in the presence of Pugach in Bronx County Court on March 20, 1961 when he attempted to make the arrest. Immediate apprehension of a criminal caught in the act is the only purpose of a citizen's arrest for a mere misdemeanor, for if there is no urgency, the citizen has time to summon an officer of the law. "Presence," therefore, as used in the New York statute permitting civil arrest, means that the citizen must actually witness the present commission of a crime.

Thus, there was no basis here for an arrest since there is not the slightest suggestion, not even an innuendo, that the alleged misdemeanor occurred in the presence of Pugach. On the contrary, it is clear that the offense, if committed at all, occurred out of his presence, without his knowledge, and a year ago in March, 1960. Moreover, even if he witnessed the commission of a misdemeanor on a past occasion, he would have no right to make an arrest now without a warrant. People v. Ostrosky, 1916, 95 Misc. 104, 160 N.Y.S. 493, 496. Since there was no misde-

---

5. Conceded on oral argument to be an application for bail.

meanor committed in his presence, his attempted arrest of the Judge for the dependent crime of aiding and abetting was also without basis. United States v. Zerbst, D.C.E.D.S.C.1953, 111 F.Supp. 807; Legatos v. United States, 9 Cir., 1955, 222 F.2d 678, 688.

■ A conspiracy is a felony under federal law, 18 U.S.C.A. §§ 1, 371. There is no need, therefore, to show that the alleged crime occurred in the presence of Pugach in order to lay a basis for a citizen's arrest. Nevertheless, the citizen must show facts establishing that the felony has been committed by the persons he attempts to arrest. Doherty v. Lester, 1957, 4 Misc.2d 741, 159 N.Y.S.2d 219. The affidavits here show no facts warranting any such conclusion.

■ Whether a conspiracy exists is rarely susceptible of ready proof. It is almost always established by circumstantial evidence from which a jury may draw the inference that there was an agreement to do an unlawful act, or an unlawful agreement to do a lawful act. The crime requires not only the agreement, but also an overt act taken by one of the conspirators in furtherance of the agreement. The affidavit here is utterly devoid of any allegations of fact from which the Court could conclude that any agreement ever existed, much less the existence of the requisite criminal intent essential to establish the crime.

Plainly, therefore, Pugach had no basis for a citizen's arrest for any of the crimes he purports to allege. Thus, the question is reduced to whether petitioner's affidavits establish probable cause for the issuance of warrants of arrest.

### Warrants

■ Where private citizens seek warrants of arrest, the practice recommended by the Judicial Conference of the United States is to refer the complaint to the United States Attorney, where, as we have seen, the power to act on it is vested.[6] This complaint was brought to his attention by the order

to show cause issued on the petition for mandamus. His opposition there makes plain the futility of further reference. Regardless of his unfettered judgment respecting further steps on a complaint, the duty to decide whether a warrant should issue rests on the Court, usually acting through the United States Commissioner. Rule 4(a), Federal Rules of Criminal Procedure, 18 U.S.C.A. The warrant cannot be issued unless the complaint shows probable cause that a crime has been committed and that the defendant has committed it. It does not follow, however, that one must issue merely because probable cause is shown. The decision turns on the exercise of judgment by the Court or Commissioner.

Before discussing the merits of petitioner's application for warrants, it is necessary to consider the effect their issuance would have on the imminent trial in the state criminal proceedings. The Supreme Court has consistently cautioned restraint against meddling by lower federal courts in the preliminary stage of state criminal proceedings. It has said repeatedly that the most sensitive source of friction between the states and the federal government lies in the intrusion of the federal courts into state criminal prosecutions. Stefanelli v. Minard, 1951, 342 U.S. 117, 120, 72 S.Ct. 118, 96 L.Ed. 138.

■ Congress has left the trial of criminal cases arising under state law to state courts, and federal courts should refuse to interfere or embarrass state proceedings except in extraordinary circumstances calling for equitable relief to prevent irreparable injury. Douglas v. City of Jeannette, 1943, 319 U.S. 157, 163, 63 S.Ct. 882, 87 L.Ed. 1324. That salutary principle was stressed heavily by the Court of Appeals in refusing to enjoin the use of evidence upon the trial of this same petitioner though obtained by the very acts complained of now (Pugach v. Dollinger, supra, 277 F.2d at page 743). All the reasons relied on there for refusing to use equity powers

6. Manual for United States Commissioners 5 (1948).

to interfere in this case apply here with more cogent force. Surely, this Court should not do indirectly, and by unprecedented and provocative means, what it would not do directly by resort to the traditional powers of a court of equity.

■ Assuming, for the moment, therefore, that petitioner's affidavits establish probable cause, the Court would nevertheless, in the exercise of discretion, refuse to issue warrants in the circumstances shown here, for the certain result would be to embarrass, impede, and obstruct state criminal proceedings. Nothing short of overzealous pity for those accused of crime, coupled with an inverted sense of justice, could sanction the arrest of a police officer, the prosecutor and the Judge at the request of the defendant, on the eve of his trial. There can be no question that the issuance of such warrants would frustrate justice, infuriate the community, and breed disrespect for law. However absolute the federal ban on wire tapping, or reasonable the alarm over expanding loopholes in the criminal law, the extreme measures urged here by petitioner for private advantage, and by others for worthier reasons, would only add fuel to a fire which may be dampened by pending legislation bringing balance to the blessings and burdens of privacy.[7] All of these reasons impel the Court, in the exercise of discretion, to refuse to issue the warrants requested.

■ The Supreme Court, in Wilson v. Schnettler, 81 S.Ct. 632, 635, recently denounced such meddling in no uncertain terms. There, the Court said, "We live in the jurisdiction of two sovereignties. Each has its own system of courts to interpret and enforce its laws, although in common territory. These courts could not perform their respective functions without embarrassing conflicts unless rules were adopted to avoid them. Such rules have been adopted. One of them is that an accused 'should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial.' Ponzi v. Fessenden, 258 U.S. 254, 259 [42 S.Ct. 309, 310, 66 L.Ed. 607]." In Benanti v. United States, 1957, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed. 2d 126, the Supreme Court taught that wire tapping and divulgence by state agents violates federal law even though the agents were acting in accordance with state law. Despite this, the policy of the State of New York admits such evidence though illegally obtained. People v. Variano, 5 N.Y.2d 391, 185 N.Y. S.2d 1, 157 N.E.2d 857. Nor does such use offend due process. Schwartz v. State of Texas, 1952, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231. Cf., Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782; Stefanelli v. Minard, 1951, 342 U.S. 117, 72 S.Ct. 118, 120, 96 L.Ed. 138; Pugach v. Dollinger, 1961, 81 S.Ct. 650, 5 L.Ed.2d 678. Thus, Pugach shows nothing here demanding interference by a federal court to assure a fair trial.

Consequently, to grant these petitions would be to give Pugach a license to obstruct, embarrass, impede, disrupt and ultimately frustrate the state prosecution against him. The Court can conceive of no disruption or embarrassment to orderly justice greater than the indelible insult of lending its process to arrest both the prosecutor and Judge on the eve of trial unless it be the issuing of a warrant for the seizure of the indictment and evidence as petitioner requests. The Court would be blind to realities, as well as to its duties, were it to institute such an improvement in the working conditions of those accused of crime.

■ Turning now to the merits of the "complaint," it is apparent on its face that it fails to comply with the requirements of Rule 3, Federal Rules of Criminal Procedure, 18 U.S.C.A., in that it was not "made upon oath before a

7. See "The New York Times," March 31, 1961, p. 8, col. 4, reporting the introduction of a bill by Senator Dodd (D. Conn.), authorizing court orders to permit wire tapping by federal and state officers investigating specified crimes.

commissioner or other officer empowered to commit persons charged with offenses against the United States." Rather, it was made before a notary public of Bronx County. That defect alone would be sufficient to refuse to issue the warrants. United States ex rel. Spader v. Wilentz, D.C.D.N.J., 25 F.R.D. 492, affirmed 3 Cir., 1960, 280 F.2d 422.

The Court does not rest on that ground, however, because petitioner is in custody and, therefore, unable to appear personally before a judicial officer of this Court. Nor is there any need to rely on technical grounds for it is clear that, assuming the truth of the allegations of fact but not the conclusions, the affidavit does not provide sufficient basis for a finding of probable cause.

■ Rules 3 and 4 of the Federal Rules of Criminal Procedure, 18 U.S.C. A., require that an arrest warrant shall be issued only upon a written and sworn complaint (1) setting forth "the essential facts constituting the offense charged" and (2) showing "that there is probable cause to believe that an offense has been committed and that the defendant has committed it". Those rules implement the requirement of the Fourth Amendment that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized". The rules apply both to arrest, as well as to search warrants. Giordenello v. United States, 1958, 357 U.S. 480, 485–486, 78 S.Ct. 1245, 2 L. Ed.2d 1503. Inferences from the facts giving rise to the complaint must be drawn, not by the person demanding arrest, but, by the neutral and detached mind of a judicial officer interposed between the self-interest of the complainant and the liberty of the accused. Johnson v. United States, supra, 333 U.S. at page 14, 68 S.Ct. at page 369, 92 L.Ed. 436.

■ The judicial officer must judge for himself the persuasiveness of the facts advanced by the complainant to show probable cause, and "He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime." Giordenello v. United States, supra, 357 U.S. at page 486, 78 S.Ct. at page 1250. Set against these criteria, this "complaint" fails to show any basis for a finding of probable cause. It not only abounds in conclusions, but wholly fails to show any facts, personal knowledge of underlying facts, any source of information, or any other basis sufficient to support a finding of probable cause that a crime has been committed. This is enough to destroy it, but its defects go much deeper.

■ Fundamentally, the "complaint" is impaired by the vice of the fatal assumption that the mere doing of an act prohibited by Section 605 constitutes a criminal violation of Section 501. That, of course, is not the law. Section 501 only condemns as criminal those prohibited acts done "willfully and knowingly". This affidavit, treated as a complaint, does not even charge wilful and knowing violation much less set forth facts upon which a Court could predicate a finding of specific criminal intent as a matter of probable cause. Screws v. United States, 1945, 325 U.S. 91, 101 et seq., 65 S.Ct. 1031, 89 L.Ed. 1495. Cf., United States v. Gris, supra.

Pugach relies on the second and fourth clauses of Section 605 of the Communications Act. The second clause provides: " * * * no person not being authorized by the sender [8] shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *." The fourth clause provides: "and no person having received such intercepted communication or having become acquainted with the contents, substance,

8. The word "sender" is an obsolete vestige of an earlier radio act. In the Lexicon of the telephone, as any directory will show, one "calls" or "dials."

purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto * * *."

The Supreme Court has virtually ignored the fourth clause but has construed the second clause in eight cases.[9] All dealt with the exclusion of evidence and none with a prosecution for alleged violations.

■ In a prosecution, Section 605 must face the canon of strict construction in favor of the accused. Smith v. United States, 1958, 360 U.S. 1, 9, 79 S.Ct. 991, 3 L.Ed.2d 1041. The fire of a criminal prosecution against state officers may well forge the ambiguities lurking in this statute into a key not a lock. Thus, applying the traditional canon, the word "person" has been interpreted to include state agents acting under state law where such meaning works for the accused, as in Benanti, supra.[10] But it is quite a different matter to expand the meaning of the word to include the state where to do so works against the accused. Thus,

despite Benanti, supra, the applicability of either the second or fourth clause of Section 605 in the context of this case is open to considerable doubt.[11]

■ Further giving the statute a strict construction in favor of the accused, violation of the second clause requires both interception *and* divulgence, a question of interpretation left open in Benanti, supra, 355 U.S. at page 100, 78 S.Ct. at page 157, 2 L.Ed.2d 126, and Rathbun, supra, 355 U.S. at page 108, 78 S.Ct. at page 162.

■ This "complaint" does not allege that either Scheer or Weldon personally intercepted or caused another to intercept Pugach's telephone communications. Nor does it state any facts to show that the act of interception was in furtherance of a conspiracy. Pugach states only that Weldon and Scheer obtained a Court order authorizing interception and, thereafter, he refers to the interception as an accomplished fact, but we are left to guess who committed the act. Absent a conspiracy, mere divulgence by one who did not personally intercept the communication, or cause another to do so, is not a violation of the second clause of Section 605. Cf., Coplon v. United States, 1951, 89 U.S.App.D.C. 103, 191 F.2d 749, 759.

9. Pugach v. Dollinger, supra; Benanti v. United States, supra; Rathbun v. United States, 1957, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134; Schwartz v. State of Texas, supra; Goldstein v. United States, 1942, 316 U.S. 114, 62 S.Ct. 1000, 86 L. Ed. 1312; Nardone v. United States, 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L. Ed. 307; Weiss v. United States, 1939, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298; Nardone v. United States, 1937, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314.

10. In Nardone, supra, the same interpretation was applied to agents of the federal government acting in violation of federal law.

11. There is no legislative history or even debate to throw light on the meaning of this statute. Congress, itself, however, has said that the word "person," when used in any Act of Congress, means "corporations, companies, associa-

tions, firms, partnerships, societies, and joint stock companies, as well as inindividuals", 1 U.S.C.A. § 1. Lest doubt remain as to the Congressional intent, the word was given that identical definition in the Communications Act, 47 U.S. C.A. § 153. Neither the statute nor the guiding definitions expressly include a sovereign state within the word "person." Wire tapping was not prohibited prior to the adoption of the Communications Act in 1934. Cf., Olmstead v. United States, 1928, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944. And since Nardone, supra, the Supreme Court has told us that "There is an old and well-known rule that statutes which in general terms divest pre-existing rights or privileges will not be applied to the sovereign without express words to that effect." United States v. United Mine Workers, 1946, 330 U.S. 258, 272, 67 S.Ct. 677, 686, 91 L.Ed. 884.

A strict construction of the fourth clause in favor of the accused, impels the conclusion that the provision "use * * * for his own benefit or for the benefit of another not entitled thereto" does not include the State of New York acting through agents in the exercise of its sovereign prerogative to enforce its criminal laws.[12] Plainly, such use is not for the agent's own benefit. Cf., United States v. Lewis, D.C.D.C. 1950, 87 F.Supp. 970, 974, reversed on other grounds 1950, 87 U.S.App.D.C. 274, 184 F.2d 394, 24 A.L.R.2d 881. Moreover, as we have seen, evidence, though obtained in violation of Section 605, if logically relevant is admissible under the law of New York, and a Grand Jury is, therefore, entitled to hear it. Once such evidence is divulged in Court, the public, through a free press, is also entitled to receive it. Grosjean v. American Press Co., 1936, 297 U.S. 233, 247, 56 S.Ct. 444, 80 L.Ed. 660. To hold otherwise would expose the broad prohibitions of this clause to serious challenge for vagueness in failing to set an ascertainable standard of guilt. Cf., United States v. L. Cohen Grocery Co., 1921, 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516.

### Habeas Corpus

Finally, Pugach seeks a writ of habeas corpus under 28 U.S.C.A. § 2254, and also by a telegram request to be brought before the Court to argue for a stay of the state prosecution under § 2251. Assuming the truth of his allegations, petitioner fails to show that he is in custody "pursuant to the judgment of a state court." Rather, he shows only that he is detained under indictment preliminary to trial. The petition is, therefore, insufficient. 28 U.S.C.A. § 2254. Even if the petition be read as showing custody pursuant to judgment,[13] there is still no showing of exhaustion of state remedies or, for that matter, that the claim made here has even been presented in the state courts. The present application under § 2254 is, therefore, premature. Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469.

Considered without regard to its procedural defects, the petition is insufficient on its merits. The use of wire tap evidence in the courts of New York, when obtained in accordance with New York law, does not violate any Constitutional right despite Benanti, supra, the Supremacy Clause, Article VI, Clause 2, United States Constitution, and the Fourteenth Amendment. United States ex rel. Graziano v. McMann, 2 Cir., 1960, 275 F.2d 284. Nor is there any basis here for a stay under § 2251. Pugach v. Dollinger, supra; Stefanelli v. Minard, supra.

All of these applications are transparent attempts to circumvent the decision rendered in Pugach v. Dollinger, supra. All seek to subvert effective prosecution of local crime in local courts. To grant any of them would expose every local law enforcement official to vexatious and intolerable interference with his duties on the flimsy claim of a defendant in a local criminal case. This would cause unwarranted interference with the normal functions of local courts. All that is shown here, at best, is that high public officials are caught in the clash of state and federal law in the performance of their duty to enforce local criminal laws. There is no rational reason why the brunt of the sovereign conflict should fall on them.

The Fourth Amendment casts a special duty upon the judiciary to protect the right of the people to be let alone. "This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obliga-

---

12. Dissenting in Goldstein v. United States, supra [316 U.S. 114, 62 S.Ct. 1006] Mr. Justice Murphy interpreted the " 'use for benefit' clause" as applicable to the government, as well as to private persons, and viewed the prohibition of the "use" of wire tap evidence as "unequivocal and controlling." With all deference, I disagree.

13. Counsel stated in oral argument that petitioner was held in custody after conviction for burglary, but the papers before the Court fail to show this.

tory upon all entrusted under our Federal system with the enforcement of the laws." Weeks v. United States, 1914, 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652.

Certainly, the fact that those accused are responsible officials performing their duties to the state government does not require a finding that they are entitled to less consideration than would be accorded to those accused of peddling dope.

Accordingly, all of the applications are denied. It is so ordered.