**INMATES OF ATTICA CORRECTION- AL FACILITY et al., Plaintiffs- Appellants,**

v.

**Nelson A. ROCKEFELLER et al., Defendants-Appellees.**

No. 596, Docket 72–1450.

United States Court of Appeals, Second Circuit.

Argued March 21, 1973.

Decided April 18, 1973.

Robert L. Boehm, New York City (Morton Stavis, William M. Kunstler, Center for Constitutional Rights, Michael Rattner, David Scribner, New York City, of counsel), for plaintiffs-appellants.

Joel Lewittes, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for the State defendants-appellees.

T. Gorman Reilly, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., for S. D. New York, Michael D. Hess, Asst. U. S. Atty., New York City, of counsel), for defendant-appellee, H. Kenneth Schroeder, Jr.

Before SMITH, FEINBERG and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

This appeal raises the question of whether the federal judiciary should, at the instance of victims, compel federal and state officials to investigate and prosecute persons who allegedly have violated certain federal and state criminal statutes. Plaintiffs in the purported class suit, which was commenced in the Southern District of New York against various state and federal officers, are certain present and former inmates of New York State's Attica Correctional Facility ("Attica"), the mother of an inmate who was killed when Attica was retaken after the inmate uprising in September 1971, and Arthur O. Eve, a New York State Assemblyman and member of the Subcommittee on Prisons.

They appeal from an order of the district court, Lloyd F. MacMahon, Judge, dismissing their complaint. We affirm.

The complaint alleges that before, during, and after the prisoner revolt at and subsequent recapture of Attica in September 1971, which resulted in the killing of 32 inmates and the wounding of many others, the defendants, including the Governor of New York, the State Commissioner of Correctional Services, the Executive Deputy Commissioner of the State Department of Correctional Services, the Superintendent at Attica, and certain State Police, Corrections Officers, and other officials, either committed, conspired to commit, or aided and abetted in the commission of various crimes against the complaining inmates and members of the class they seek to represent. It is charged that the inmates were intentionally subjected to cruel and inhuman treatment prior to the inmate riot, that State Police, Troopers, and Correction Officers (one of whom is named) intentionally killed some of the inmate victims without provocation during the recovery of Attica, that state officers (several of whom are named and whom the inmates claim they can identify) assaulted and beat prisoners after the prison had been successfully retaken and the prisoners had surrendered, see Inmates of Attica Correctional Facility v. Rockefeller, 453 F.2d 12 (2d Cir. 1971), that personal property of the inmates was thereafter stolen or destroyed, and that medical assistance was maliciously denied to over 400 inmates wounded during the recovery of the prison.

The complaint further alleges that Robert E. Fischer, a Deputy State Attorney General specially appointed by the Governor to supersede the District Attorney of Wyoming County and, with a specially convened grand jury, to investigate crimes relating to the inmates' takeover of Attica and the resumption of control by the state authorities, see Inmates, supra at 16 and n. 3, "has not investigated, nor does he intend to investigate, any crimes committed by state

officers." Plaintiffs claim, moreover, that because Fischer was appointed by the Governor he cannot neutrally investigate the responsibility of the Governor and other state officers said to have conspired to commit the crimes alleged. It is also asserted that since Fischer is the sole state official currently authorized under state law to prosecute the offenses allegedly committed by the state officers, no one in the State of New York is investigating or prosecuting them.[1]

With respect to the sole federal defendant,[2] the United States Attorney for the Western District of New York, the complaint simply alleges that he has not arrested, investigated, or instituted prosecutions against any of the state officers accused of criminal violation of plaintiffs' federal civil rights, 18 U.S.C. §§ 241, 242, and he has thereby failed to carry out the duty placed upon him by 42 U.S.C. § 1987, discussed below.

As a remedy for the asserted failure of the defendants to prosecute violations of state and federal criminal laws, plaintiffs request relief in the nature of mandamus (1) against state officials, requiring the State of New York to submit a plan for the independent and impartial investigation and prosecution of the offenses charged against the named and unknown state officers, and insuring the appointment of an impartial state prosecutor and state judge to "prosecute the defendants forthwith,"

and (2) against the United States Attorney, requiring him to investigate, arrest and prosecute the same state officers for having committed the federal offenses defined by 18 U.S.C. §§ 241 and 242. The latter statutes punish, respectively, conspiracies against a citizen's free exercise or enjoyment of rights secured by the Constitution and laws of the United States, see United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966), and the willful subjection of any inhabitant, under color of law, to the deprivation of such rights or to different punishment or penalties on account of alienage, color, or race than are prescribed for the punishment of citizens, see Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).[3]

Federal jurisdiction over the claim against the state defendants was based on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and over the claim against the United States Attorney on the mandamus statute. 28 U.S.C. § 1361. Venue in the Southern District of New York was predicated on 28 U.S.C. §§ 1391(b), 1392(a). The motions of the federal and state defendants to dismiss the complaint for failure to state claims upon which relief can be granted, Rule 12(b)(6), F.R.Civ.P., were granted by Judge MacMahon without opinion. We agree that the extraordinary relief sought cannot be granted in the situation here presented.

---

1. The State has pointed out that the special Wyoming County grand jury has already handed down 37 sealed indictments and has not yet completed its investigation. On oral argument, however, the Assistant Attorney General observed that none of the indictments handed down thus far concerns any state officer and, of course, that there is no assurance that further indictments will be forthcoming.

2. See note 3 *infra.*

3. As originally filed, the complaint also sought a declaratory judgment against defendants Rockefeller, Oswald, Dunbar, Mancusi, and other defendants named in the complaint, declaring them to be "unfit

to administer Attica Correctional Facility and the prison system of New York," and an order permanently enjoining these state officials from further administration of the prison system and placing the entire system, including the facility at Attica, into federal receivership. The United States Magistrate for the Western District of New York, Edmund Maxwell, was also named as a defendant in the complaint. Prior to the hearing on the motions to dismiss, however, plaintiffs consented to the dismissal of that portion of the complaint which requested such relief and to the dismissal of Maxwell as a defendant.

### Standing

At the outset, we must note that the Supreme Court's recent decision in Linda R.S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), to which the attention of the parties in this case was not drawn prior to argument, raises the preliminary question of whether plaintiffs have a sufficient "personal stake in the outcome of the controversy," Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), to confer standing upon them to invoke the judicial process. In Linda R.S. the mother of an illegitimate child sought to attack as unconstitutionally discriminatory the application of a Texas criminal statute prohibiting the willful refusal of "any parent" to support his or her child on the ground that it was enforced by the state, as a result of state court interpretation of the statute, against married but not unmarried fathers. Holding that she lacked standing, the Supreme Court, in a majority opinion by Justice Marshall, observed:

> "The Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution. See Younger v. Harris, 401 U.S. 37, 42, 91 S.Ct. 746, 27 L. Ed.2d 669 (1971); Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Poe v. Ullman, 367 U.S. 497, 501, 81 S.Ct. 752, 6 L. Ed.2d 989 (1961). Although these cases arose in a somewhat different context, they demonstrate that, in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." 410 U.S. at 619, 93 S.Ct. at 1149.

The broad reach of this language would, at first blush, appear to preclude the plaintiffs here from seeking to contest the nonprosecution of third parties they accuse of criminal conduct. However, the present case is in some respects distinguishable from Linda R.S. Unlike the mother there the inmates here might be said to have sustained or be immediately in danger of sustaining direct personal injury as the result of nonenforcement of the criminal laws against the accused state officers. See 410 U.S. at 619, 93 S.Ct. 1146; Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). They allege that at least some of them suffered direct physical injury at the hands of those they seek to have prosecuted and that if the state officers accused of criminal conduct are not prosecuted, such conduct will continue.

Thus a more immediate and direct danger of injury resulting from nonenforcement is presented here than in Linda R.S., where the Court stressed that the only result of the relief sought by the illegitimate child's mother would be the jailing of the child's father, not the support of the child. Where a successful prosecution, however, would serve to deter the accused from harming the complainant rather than merely supply a penal inducement to perform a duty to provide assistance, the complaining person does show a more direct nexus between his personal interest in protection from harm and the prosecution. But in the present case this rationale in support of standing assumes that injunctive relief, which we conditionally authorized in Inmates of Attica Correctional Facility v. Rockefeller, supra, 453 F.2d at 22–25, restraining physical abuse, torture, beatings or other forms of brutality, or threats of such conduct, is ineffective to protect the plaintiffs from harm.

It may also be argued that since 37 inmates have been indicted for crimes relating to the events at Attica in September 1971, without any indictment having been filed against any of the accused state officials, the complaint alleges a sufficient threat of selective and discriminatory prosecution of the plaintiff inmates to meet the standing requirements discussed in Linda R.S. v. Richard D., supra. On the other hand,

the challenge in the present case is not to any criminal statute, as construed, but to the failure of the prosecuting authorities to enforce the criminal laws against a particular group of individuals.

Thus in order to determine whether plaintiffs have standing to sue we would be required to resolve troublesome questions. However, we need not decide the issue of standing because we believe that even if they may properly present their claims for judicial resolution, they seek relief which cannot, in this case at least, be granted either against the state or federal prosecuting authorities.

*The Insufficiency of the Complaint*

(1) *Claim Against the United States Attorney*

With respect to the defendant United States Attorney, plaintiffs seek mandamus to compel him to investigate and institute prosecutions against state officers, most of whom are not identified, for alleged violations of 18 U.S.C. §§ 241 and 242. Federal mandamus is, of course, available only "to compel an officer or employee of the United States . . . to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. And the legislative history of § 1361 makes it clear that ordinarily the courts are " 'not to direct or influence the exercise of discretion of the officer or agency in the making of the decision,' " United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 374 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S. Ct. 1195, 22 L.Ed.2d 460 (1969). More particularly, federal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the instance of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons regarding whom a complaint of criminal conduct is made. E. g., Milliken v. Stone, 16 F.2d 981 (2d Cir.), cert. denied, 274 U.S. 748, 47 S.Ct. 764, 71 L.Ed. 1331 (1927); Pugach v. Klein, 193 F.Supp. 630 (S.D.N.Y.1961); Powell v. Katzenbach, 123 U.S.App.D.C. 250, 359 F.2d 234 (1965),

cert. denied, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359, rehearing denied, 384 U.S. 967, 86 S.Ct. 1584, 16 L.Ed.2d 679 (1966); Smith v. United States, 375 F. 2d 243 (5th Cir.), cert. denied, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967). See also Confiscation Cases, 74 U.S. (7 Wall.) 454, 19 L.Ed. 196 (1868); Goldberg v. Hoffman, 225 F.2d 463 (7th Cir. 1955); United States v. Cox, 342 F.2d 167 (5th Cir.), cert. denied sub nom., Cox v. Hauberg, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965); Newman v. United States, 127 U.S.App.D.C. 263, 382 F.2d 479 (1967).

This judicial reluctance to direct federal prosecutions at the instance of a private party asserting the failure of United States officials to prosecute alleged criminal violations has been applied even in cases such as the present one where, according to the allegations of the complaint, which we must accept as true for purposes of this appeal, see Inmates of Attica Correctional Facility v. Rockefeller, *supra*, 453 F.2d at 24 (and cases there cited), serious questions are raised as to the protection of the civil rights and physical security of a definable class of victims of crime and as to the fair administration of the criminal justice system. Moses v. Kennedy, 219 F.Supp. 762 (D.D.C.1963), affd. sub nom., Moses v. Katzenbach, 119 U.S.App.D.C. 352, 342 F.2d 931 (1965); Peek v. Mitchell, 419 F.2d 575 (6th Cir. 1970).

The primary ground upon which this traditional judicial aversion to compelling prosecutions has been based is the separation of powers doctrine.

"Although as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere

with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions." United States v. Cox, *supra* 342 F.2d at 171.

Accord, Pugach v. Klein, *supra* 193 F. Supp. at 634; Moses v. Kennedy, 219 F. Supp. at 764–765; Peek v. Mitchell, *supra* 419 F.2d at 577–578.

Although a leading commentator has criticized this broad view as unsound and incompatible with the normal function of the judiciary in reviewing for abuse or arbitrariness administrative acts that fall within the discretion of executive officers, K. C. Davis, Administrative Law Treatise § 28.16(4) at 982–990 (1970 Supp.), he has also recognized, as have most of the cases cited above, that the manifold imponderables which enter into the prosecutor's decision to prosecute or not to prosecute make the choice not readily amenable to judicial supervision.

■ In the absence of statutorily defined standards governing reviewability, or regulatory or statutory policies of prosecution, the problems inherent in the task of supervising prosecutorial decisions do not lend themselves to resolution by the judiciary. The reviewing courts would be placed in the undesirable and injudicious posture of becoming "superprosecutors." In the normal case of review of executive acts of discretion, the administrative record is open, public and reviewable on the basis of what it contains. The decision not to prosecute, on the other hand, may be based upon the insufficiency of the available evidence, in which event the secrecy of the grand jury and of the prosecutor's file may serve to protect the accused's reputation from public damage based upon insufficient, improper, or even malicious charges. *In camera* review would not be meaningful without access by the complaining party to the evidence before the grand jury or U.S. Attorney. Such interference with the normal operations of criminal investigations, in turn, based solely upon allegations of criminal con-

duct, raises serious questions of potential abuse by persons seeking to have other persons prosecuted. Any person, merely by filing a complaint containing allegations in general terms (permitted by the Federal Rules) of unlawful failure to prosecute, could gain access to the prosecutor's file and the grand jury's minutes, notwithstanding the secrecy normally attaching to the latter by law. See Rule 6(e), F.R.Cr.P.

Nor is it clear what the judiciary's role of supervision should be were it to undertake such a review. At what point would the prosecutor be entitled to call a halt to further investigation as unlikely to be productive? What evidentiary standard would be used to decide whether prosecution should be compelled? How much judgment would the United States Attorney be allowed? Would he be permitted to limit himself to a strong "test" case rather than pursue weaker cases? What collateral factors would be permissible bases for a decision not to prosecute, e. g., the pendency of another criminal proceeding elsewhere against the same parties? What sort of review should be available in cases like the present one where the conduct complained of allegedly violates state as well as federal laws? See generally, Schwartz, Federal Criminal Jurisdiction and Prosecutors' Discretion, 13 Law & Contemp.Prob. 64 (1948). With limited personnel and facilities at his disposal, what priority would the prosecutor be required to give to cases in which investigation or prosecution was directed by the court?

■ These difficult questions engender serious doubts as to the judiciary's capacity to review and as to the problem of arbitrariness inherent in any judicial decision to order prosecution. On balance, we believe that substitution of a court's decision to compel prosecution for the U.S. Attorney's decision not to prosecute, even upon an abuse of discretion standard of review and even if limited to directing that a prosecution be undertaken in good faith, see Note, Dis-

cretion to Prosecute Federal Civil Rights Crimes, 74 Yale L.J. 1297, 1310–12 (1965), would be unwise.

Plaintiffs urge, however, that Congress withdrew the normal prosecutorial discretion for the kind of conduct alleged here by providing in 42 U.S.C. § 1987 [4] that the United States Attorneys are "authorized *and required* . . . to institute prosecutions against all persons violating any of the provisions of [18 U.S.C. §§ 241, 242]" (emphasis supplied), and, therefore, that no barrier to a judicial directive to institute prosecutions remains. This contention must be rejected. The mandatory nature of the word "required" as it appears in § 1987 is insufficient to evince a broad Congressional purpose to bar the exercise of executive discretion in the prosecution of federal civil rights crimes. Similar mandatory language is contained in the general direction in 28 U.S.C. § 547(1) ("each United States attorney, . . . *shall*—(1) prosecute for all offenses against the United States; . . ." (emphasis supplied)) and in other statutes in particular areas of concern, e. g., 33 U.S.C. § 413 ("it shall be the duty of United States attorneys to vigorously prosecute all offenders" of certain provisions of the Rivers and Harbors Act when requested to do so by the appropriate officials). See also 45 U.S.C. § 152 (Tenth).

Such language has never been thought to preclude the exercise of prosecutorial discretion. See Bass Angler's Sportsman's Society v. Scholze Tannery, Inc., 329 F.Supp. 339, 345–346 (E.D.Tenn. 1971). Indeed the same contention made here was specifically rejected in Moses v. Kennedy, 219 F.Supp. 762, 765 (D.D.C.1963), aff'd. 119 U.S.App.D.C. 352, 342 F.2d 931 (1965), where seven black residents and one white resident of Mississippi sought mandamus to compel the Attorney General of the United States and the Director of the F.B.I. to investigate, arrest, and prosecute certain individuals, including state and local law enforcement officers, for willfully depriving the plaintiffs of their civil rights. There the Court noted that "considerations of judgment and discretion apply with special strength to the area of civil rights, where the Executive Department must be largely free to exercise its considered judgment on questions of whether to proceed by means of prosecution, injunction, varying forms of persuasion, or other types of action." See also Peek v. Mitchell, *supra.*

Nor do we find the legislative history of § 1987 persuasive of an intent by Congress to depart so significantly from the normal assumption of executive discretion. In re Upchurch, 38 F. 25, 27 (C.C.N.C.1889), relied upon by plaintiffs, held only that a United States commissioner had the power under § 1987 to appoint a person other than the marshal, or one of his deputies, to execute process. It may well be that the legislative background of § 1987 would compel a reading that Congress intended that federal marshals have no choice but to execute warrants issued pursuant to that section, since it also provided for criminal penalties for those who refused to do so and for the appointment of other persons to execute warrants and make arrests. No such conclusion can persuasively be drawn with respect to the exercise by United States Attorneys of prosecutorial discretion, especially in the absence of any similar statutory deterrent

---

4. "§ 1987. *Prosecution of violation of certain laws*

"The United States attorneys, marshals, and deputy marshals, the commissioners appointed by the district and territorial courts, with power to arrest, imprison, or bail offenders, and every other officer who is especially empowered by the President, are authorized and required, at the expense of the United States, to institute prosecutions against all persons violating any of the provisions of section 1990 of this title or of sections 5506 to 5516 and 5518 to 5532 of the Revised Statutes, and to cause such persons to be arrested, and imprisoned or bailed, for trial before the court of the United States or the territorial court having cognizance of the offense."

against their failure or refusal to prosecute. See Note, Discretion to Prosecute Federal Civil Rights Crimes, 74 Yale L. J. 1297, 1306–07 and n. 46 (1965). Thus, we do not read § 1987 as stripping the United States Attorneys of their normal prosecutorial discretion for the civil rights crimes specified.

It therefore becomes unnecessary to decide whether, if Congress were by explicit direction and guidelines to remove all prosecutorial discretion with respect to certain crimes or in certain circumstances we would properly direct that a prosecution be undertaken. Cf. Powell v. Katzenbach, *supra*, 359 F.2d at 235; Note, *supra* at 1305.

### (2) *Claims Against the State Officials*

■■ With respect to the state defendants, plaintiffs also seek prosecution of named and unknown persons for the violation of state crimes. However, they have pointed to no statutory language even arguably creating any mandatory duty upon the state officials to bring such prosecutions. To the contrary, New York law reposes in its prosecutors a discretion to decide whether or not to prosecute in a given case, which is not subject to review in the state courts. Hassan v. Magistrates Court, 20 Misc.2d 509, 191 N.Y.S.2d 238 (1959), appeal dismissed, 10 A.D.2d 908, 202 N.Y.S.2d 1002 (2d Dept.), leave to appeal denied, 8 N.Y.2d 750, 201 N.Y.S.2d 765, cert. denied, 364 U.S. 844, 81 S.Ct. 86, 5 L.Ed. 2d 68 (1960). Yet the federal district court is asked to compel state prosecutions and appoint an "impartial" state prosecutor and state judge to conduct them, as well as to require the submission of a plan for impartial investigation and prosecution of the alleged offenses, on the basis of 42 U.S.C. § 1983, in the context of a continuing grand jury investigation into criminal conduct connected with the Attica uprising, *supra* n. 1, and where the state itself on September 30, 1971, appointed a Special Commission on Attica which has now published its findings.[5] The very elaborateness of the relief believed by plaintiffs to be required indicates the difficulties inherent in judicial supervision of prosecutions, federal or state, which render such a course inadvisable.

Plaintiffs point to language in our earlier opinion, Inmates of Attica Correctional Facility v. Rockefeller, 453 F.2d 12, 20 (2d Cir. 1971), to the effect that "the State has the duty to investigate and prosecute all persons, including inmates, who may have engaged in criminal conduct before, during and after the uprising." But the statement does not support their present demands. The existence of such a duty does not define its dimensions or imply that an alleged failure to perform the duty completely or equally, as between inmates and state officials, will support federal judicial supervision of state criminal prosecutions. The serious charge that the state's investigation is proceeding against inmates but not against state officers, if shown to be accurate, might lead the Governor to supplement or replace those presently in charge of the investigation or the state legislature to act. But the gravity of the allegation does not reduce the inherent judicial incapacity to supervise.

The only authority supporting the extraordinary relief requested here is the Seventh Circuit's recent decision in Littleton v. Berbling, 468 F.2d 389 (1972), cert. granted, 411 U.S. 915, 93 S.Ct. 1544, 36 L.Ed.2d 306 (1973). There a class of black citizens of Cairo, Illinois, brought suit for damages and injunctive relief against a state prosecutor, an investigator for him, a magistrate and a state judge, charging that the defendants had "systematically applied the state criminal laws so as to discriminate against plaintiffs and their class on the basis of race, interfering thereby with the free exercise of their constitutional

---

5. Attica: The Official Report of the New York State Special Commission on Attica (1972).

rights." *Id.* at 392. They alleged a long history indicating a concerted pattern of officially sponsored racial discrimination. In reversing the district court's dismissal of the complaint, a divided panel concluded that a state judge, while not subject to suit for damages under § 1983, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), may be enjoined from unconstitutionally fixing bails and imposing sentences that discriminated sharply against black persons, and that the State Attorney's quasi-judicial immunity from suit for damages when performing his prosecutorial function, *id.* 468 F.2d at 410, "does not extend to complete freedom from injunction," *id.* at 411. Finding other possible remedies either unavailable or ineffective, the Court approved the possibility of some type of injunctive relief, not fully specified, but which might include a requirement of "periodic reports of various types of aggregate data on actions on bail and sentencing and dispositions of complaints." *Id.* at 415.

However, the decision in *Littleton* is clearly distinguishable. There the claim, unlike that here, alleged a systematic and lengthy course of egregious racial discrimination in which black persons were denied equal access to and treatment by the state criminal justice system. Furthermore, the Court's decision does not appear to have compelled the institution of criminal prosecutions, which is the principal relief sought here. In short, we believe that *Littleton* should be strictly limited to its peculiar facts, as apparently did the Court itself. See *id.* at 415. To the extent that it may be construed as approving federal judicial review and supervision of the exercise of prosecutorial discretion and as compelling the institution of criminal proceedings, we do not share such an extension of its views.

The order of the district court is affirmed.