UNITED STATES of America, Plaintiff,

v.

Donnel L. DANGLER, Cecil Grain, Inc., Defendants.

No. CR 82–30.

United States District Court,
N.D. Ohio, W.D.

Feb. 14, 1983.

Paul G. Gorman, Asst. U.S. Atty., Toledo, Ohio, for plaintiff.

John Pyle, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

DON J. YOUNG, Senior District Judge:

In this case the defendants were found guilty, after a jury trial, on a three-count indictment charging making a false written statement to the Commodity Credit Corporation, and of converting large quantities of soybeans and wheat which were mortgaged and pledged to the Commodity Credit Corporation.

On November 18, 1982, the individual defendant was given concurrent sentences of five years imprisonment on each of the three counts of the indictment, and a fine of Ten Thousand Dollars ($10,000) on each count of the indictment, for an aggregate fine of Thirty Thousand Dollars ($30,000). Execution of the sentence of imprisonment only was suspended, and the defendant placed on probation for five (5) years, with a special condition that a schedule of payment of the fines be worked out with the Probation Department.

The corporate defendant was fined Ten Thousand Dollars ($10,000) on each of the two counts of the indictment against it.

The defendants have timely filed a motion for reduction of sentence, seeking to have the fines imposed reduced to a total amount of Twenty Thousand Dollars ($20,-000), alleging that the fine is unnecessarily harsh.

The defendants argue that,

"The issue is what is the appropriate sentence for a man who committed acts of dishonesty which resulted in no substantial loss to the government."

Having set up that rather specious straw man, the defendants undertake to demolish it by saying that the fundamental purpose of sentences has traditionally been rehabilitation and deterrence; that the evidence and the presentence report showed Mr. Dangler to be fundamentally a decent, hardworking man; that any rehabilitative purpose of the sentence had already been accomplished, as had any deterrent effect of sentence; that defendant had "been punished in so many different ways that depriving him of money which he needed to finance his farming operation and provide for income in his retirement is excessive" punishment.

The defendants argued further that the fine "in reality is a penalty for an exercise of the right to trial." They go on to claim that a plea bargain was offered which would have precluded more than a Ten Thousand Dollar ($10,000) fine. Parenthetically, it should be noted that the Court had no knowledge of any plea bargaining until reading defendants' memorandum in support of this motion, although of course there was no reason to suppose that plea bargaining had not taken place, as it usually does, before the case was tried.

Defendants conclude by alleging selective prosecution, claiming that violations of government loan programs are never prosecuted, and that first offenders are never given harsh punishments.

From a standpoint of the law, there are many purposes for criminal sentencing, not just the two stated by the defendants. Probably the primary one is punishment. That punishment may deter the particular offender, especially when it involves incarceration. The example of punishment is sometimes said to deter others who may be contemplating a criminal act, but the assumption that it does so is very much debatable and debated. There may also be a rehabilitative purpose in punishment, but how much and how often that purpose is achieved not only is also highly debatable, but depends a great deal on the circumstances both of the sentence and the person sentenced. What will rehabilitate one offender may have little effect on another. The public expects that sentencing will protect society, and regards this protection as the primary objective of punishment. There is also a large component of revenge involved in the public's approach to sentencing. A sentencing court must weigh all of these elements in the light of the circumstances of both the offense and the offender, in order to make a sentencing decision.

It is not easy to reconcile all of these often conflicting ideas and objectives, and each sentence must be imposed under a unique set of facts and law.

█ The defendants put much weight on their claim that the government actually lost no money as the result of their machinations. That is not the issue from a legal standpoint. Nor is it entirely true, for in connection with the first count, at least, the government loaned a larger amount than it should have, to the injury of the loan program. The fact that Mr. Dangler was clever enough, or lucky enough, to violate the law on the other two counts of the indictment without costing the government or his customers the large sums of money that his actions could have cost them is beside the point. He deliberately violated the law to make money for himself. He sold hypothecated goods for Three Hundred Eighty Thousand Dollars ($380,000) part of which he had for five months, and part for seven months. Using defendant's own rate of fourteen percent (14%) interest, that money would earn, over the time spans involved, about Twenty-five Thousand Four Hundred Twenty-five Dollars ($25,425). How the defendants reach the conclusion that this large sum of money could have been borrowed for the time involved for only Six Thousand Eight Hundred Fifty Dollars ($6,850) is not clear. However, all of these calculations leave out any consideration of the fact that the defendants not only had the use of this large amount of money without paying for it, but also made profits on the sale and later repurchase of the merchandise.

█ Actually, the sentencing ought to have some relationship, not only to the

harm done by the offense, but also to the amount of criminal intent involved. Certainly the criminal intent involved in a coldly calculated series of acts designed to make money for the criminal with bad purpose either to disobey or to disregard the law is far higher than that involved in a momentary crime of passion or a crime of opportunity, sudden and overwhelmingly tempting. The criminal intent involved in this matter was great indeed, and when the amount of the fines is reduced by the profits that the defendants realized, or could have realized, the penalty seems lenient, rather than harsh.

A truly condign punishment in this case would have involved at least some imprisonment, but in considering the offender, and not just the offense, this court was oppressed by the feeling that imprisonment involved an excessive risk of being disastrous out of proportion to what the law requires. The magnitude of the offense could not possibly justify a death sentence. The Court reluctantly followed the view of Paul Block, the publisher of the *Toledo Blade,* expressed many years ago, that money crimes should be given money punishments.

■ The complaint that the defendants were punished because they stood on their constitutional right to a jury trial is hardly worthy of notice. This Court has nothing to do with a defendant's decision whether or not he shall exercise the right, and since the Court is hired to accord that right to all who wish to exercise it, that decision must be, and is, a matter of indifference to the court, not a factor in sentencing. It is frequently much less of a burden to try a case to a jury than to determine whether or not to approve a plea bargain. However, lay people, and many lawyers, overlook the practical aspect of resorting to trial that in the course of trial, numerous circumstances may and often do appear which make the offense seem more heinous, or the offender more villainous, than the bare language of an indictment and plea reveal. Trial of any lawsuit involves an element of risk of loss as well as gain. One who gambles cannot complain if he loses.

■ The argument of selective enforcement made by the defendants is popular with the news media today, but has no standing in the law. From the earliest days of our system of law, the decision of the Executive Branch of the government as to whether or not a given case should be prosecuted has been beyond the reach of the power of the Judicial Branch. This rule has been so well established for so long a time that it has rarely come before the higher courts, but the Courts of Appeal and the Supreme Court have never departed from it when it has been before them. *Cox v. U.S.,* 473 F.2d 334, (4th Cir. en banc, 1973); *Inmates of Attica Correctional Facility v. Rockefeller,* 477 F.2d 375, 379 (2nd Cir. 1978).

■ Actually, this claim is equivalent to the childish complaint that somebody also did the same wrongful thing, and got away with it. The fact that not every law violator is punished does not make the law any less violated, or punishment any less appropriate. Society could not exist if there were no laws and no punishments. To return to an earlier theme of this memorandum, perhaps the fact that someone did get punished for the violation will disabuse others of the idea that the law can be violated with impunity.

The evidence at the trial left no doubt that the defendants deliberately violated the law to make money for themselves. How "fundamentally decent" a person is who will do such a thing is, to say the least, questionable. In the light of the magnitude of the amounts of money involved in the offenses, and the profits that were or could have been realized by the defendants, the fines imposed are small ones. If the defendants' motion were granted, and the fine were reduced to the amount they suggest, it would amount to nothing, or less than nothing. The motion must be overruled.

THEREFORE, for the reasons stated, good cause therefor appearing, it is

ORDERED that the motion of the defendants for reduction of sentence be, and the same hereby is, OVERRULED.

IT IS SO ORDERED.