GLD-051                                          **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3291
_____

THOMAS S. WASHAM,
                                             Appellant

v.

SUPERINTENDENT MICHAEL D. KLOPOTOSKI; SERGEANT TURNBAUGH
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3:08-cv-01082)
District Judge:  Honorable Thomas I. Vanaskie

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
November 24, 2010
Before:  AMBRO, CHAGARES AND NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 10, 2010)
_____

OPINION
_____

PER CURIAM

        This is an appeal from the District Court's grant of defendants' motion for

summary judgment.  For the following reasons, we will summarily affirm.  <u>See</u> 3d Cir.

L.A.R. 27.4; 3d Cir. I.O.P. 10.6.

In 2008, Thomas Washam, an inmate at the State Correctional Institute at Dallas, Pennsylvania ("SCI-Dallas"), filed a pro se civil rights action in the District Court pursuant to 42 U.S.C. § 1983. Washam's claims stem from an incident in November 2007, when on the way to the SCI-Dallas gym, he was told by Correctional Officer Christopher Weaver that he could not enter the gym with the two books he was carrying – a copy of the Quran and a book on the basics of Islam. After being refused entry to the gym, Washam walked towards his housing unit to return the books, when Sergeant Frank Turnbaugh allegedly knocked the books out of Washam's hand, slammed Washam to the ground, and handcuffed him.[1] Weaver filed a misconduct complaint against Washam, claiming Washam had disobeyed orders to stop walking away from the officers, which is why Turnbaugh responded with force. As punishment for the alleged misconduct, Washam had to spend time in the restricted housing unit. Less than a week after the incident, Washam filed a grievance against Turnbaugh, and in March 2008 filed a second grievance. Both grievances were dismissed because inmates are not permitted to file grievances related to disciplinary matters.

In his complaint, Washam alleged that Turnbaugh religiously and racially discriminated against Washam, an African American Muslim. Washam also claimed that Turnbaugh and Superintendent Michael Klopotoski retaliated against Washam for exercising his religious freedom and for filing grievances. Washam further claimed that Turnbaugh used excessive force against him, and that Klopotoski responded with

---

[1] The defendants disputed Washam's version of the incident. In a motion for summary judgment, however, we, like the District Court, must take the facts in the light most favorable to Washam. See Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

2

deliberate indifference to Washam's filing of grievances in violation of the Eighth Amendment.

In May 2009, the defendants filed a motion for summary judgment. After further filings in response to the motion by both Washam and the defendants, the Magistrate Judge issued a Report in March 2010, recommending a grant of defendants' motion for summary judgment as to all claims. In July 2010, the District Court adopted the Magistrate Judge's Report, and granted the defendants' motion for summary judgment. Washam now appeals from the District Court decision.[2]

We exercise plenary review over the District Court's grant of the defendants' motion for summary judgment. See Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). A motion for summary judgment should be granted only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party first must show that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating a genuine issue for trial. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). "Our role in reviewing a grant of summary judgment is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party."

---

[2] We have jurisdiction pursuant to 28 U.S.C. § 1291, and may affirm the District Court's judgment on any basis supported by the record. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).

Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010) (citation and internal quotations omitted).

We agree with the District Court that Washam did not come forward with evidence sufficient to create a genuine issue of material fact regarding his religious and racial discrimination claim. To bring a successful Equal Protection claim under § 1983, a plaintiff must prove the existence of purposeful discrimination, and demonstrate that he was treated differently from similarly situated individuals. See Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992); Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990).

Washam has not come forward with any evidence indicating that Turnbaugh was motivated by religious or racial animus when he knocked books out of Washam's hands and slammed Washam to the ground. Although Weaver examined Washam's books and would have known their religious nature, Turnbaugh was not in direct proximity of the area of that conversation, and had no way of knowing that Washam was carrying religious books. In his opposition to defendants' motion for summary judgment, Washam explained that he "has a full beard, wears a kufi-religious Muslim cap and carries a Qur'an around the Institution," and that as a result it would be obvious to Turnbaugh that Washam was Muslim. Even if Turnbaugh did identify Washam as an African American Muslim, however, that fact alone does not establish any discriminatory intent on the part of Turnbaugh. The only evidence that could potentially establish a religious or racial motivation is the fact that Turnbaugh was muttering curse words as he approached Washam. Nonetheless, Washam could not recall what words were used, and

4

there is no evidence that the curse words were racially or religiously offensive.

Accordingly, Washam did not present any evidence demonstrating purposeful

discrimination, and the District Court properly granted summary judgment on the

discrimination claim.[3]

Washam also did not come forward with enough evidence to create a genuine

issue of material fact regarding a claim of retaliation. To prove retaliation, an inmate

must show: (1) constitutionally protected conduct; (2) an adverse action by prison

officials sufficient to deter a person of ordinary firmness from exercising his

constitutional rights; and (3) a causal link between the exercise of his constitutional rights

and adverse action taken against him. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)

(citation omitted). Defendants may prevail by proving the same action would have been

taken in the absence of the protected activity. Rauser v. Horn, 241 F.3d 330, 334 (3d Cir.

2001).

The basis for Washam's retaliation claim is not entirely clear from his filings. To

the extent that Washam claims that Turnbaugh retaliated against him because he

exercised his right to freedom of religion, Washam's claim fails. As explained above,

there is no evidence that Turnbaugh was motivated by any religious animus when he used

---

[3] The Magistrate Judge noted in his Report that Washam also alleged discrimination in not being allowed into the gym because of his Muslim religion. The Magistrate Judge disposed of this claim because Weaver was the officer responsible for preventing Washam from entering the gym, and Weaver was not listed as a defendant. Although Washam did list "et. al" as additional defendants in his complaint, his subsequent filings make clear that only Turnbaugh and Klopotoski are the defendants in the case. Accordingly, to the extent Washam alleged a constitutional violation for not being allowed into the gym, the District Court properly granted the defendants' motion for summary judgment.

force against Washam. There is also no evidence that Turnbaugh conspired with Weaver to file a misconduct report as a way to punish Washam for exercising his constitutionally protected religious rights. As a result, there is no causal link between Washam's practicing of Islam and Turnbaugh's actions, and summary judgment was appropriate. To the extent that Washam claims that either Klopotoski or Turnbaugh retaliated against him for filing a grievance, Washam's claim is also without merit. Although Washam filed his first grievance within a week of the incident with Turnbaugh, Washam had already been sent to the restricted housing unit as punishment, and there is no evidence that the time he was assigned to the restricted housing unit increased after he filed his first grievance. Thus, Washam has no evidence that he was punished for exercising his rights under the grievance procedures. Accordingly, the District Court properly granted summary judgment as to the retaliation claim.

We also agree with the District Court that Washam did not create a genuine issue of material fact with respect to his claim of excessive use of force against Turnbaugh. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. See Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). When reviewing Eighth Amendment excessive force claims, we must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. Whether the force applied was excessive requires the examination of several factors outlined by the Supreme Court in Whitley v. Albers, 475 U.S. 312, 321 (1986), including: (1) the need for the application of force; (2) the relationship between the need and the

6

amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Regarding the first factor, it is not clear from the facts in the record whether there was a need for the application of force. Taking the facts in the light most favorable to Washam, see Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007), it is unclear whether anyone ever told Washam to stop as he walked towards the housing unit. According to Washam, Turnbaugh yelled "yo, yo, come here," and Washam stopped walking and turned towards Turnbaugh. While Turnbaugh's yelling in Washam's direction may indicate Turnbaugh had a subjective safety concern about Washam, standing alone it does not indicate that Turnbaugh needed to apply force.

Even if Turnbaugh did unnecessarily use force, however, in balancing the Whitley factors "there is no constitutional violation for 'de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind' . . . ." Brooks v. Kyler, 204 F.3d 102, 107 (3d Cir. 2000) (quoting Hudson, 503 U.S. at 9-10). At most, the only force Turnbaugh utilized was knocking books out of Washam's hands, slamming Washam to the ground, and handcuffing him. Washam admitted that his injuries were minimal – restricted to abrasions on his shoulder and around one knee. Although de minimis injuries alone are not enough to justify a grant of summary judgment on an excessive force claim, in this instance they are indicative of the fact that the force utilized was also de minimis. See Brooks, 204 F.3d at 108-09. Considering

7

there is no evidence in the record to establish that Turnbaugh acted because of religious or racial animus, and keeping in mind all the Whitley factors, no reasonable jury could find that the de minimis force utilized by Turnbaugh was "of a sort repugnant to the conscience of mankind" in violation of the Eighth Amendment. Accordingly, the District Court properly granted summary judgment as to the claim of excessive force.

Finally, Washam also failed to create a genuine issue of material fact with respect to his claim of deliberate indifference. Washam alleged that Klopotoski was deliberately indifferent to plaintiff's safety in that Klopotoski failed to appropriately investigate Washam's grievances. See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (to prove deliberate indifference, plaintiff must show defendant had a "'sufficiently culpable state of mind'" (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991))). Washam was given fair access to the grievance procedures, and his grievances were properly dismissed given the prison policy that inmates are not permitted to file grievances related to disciplinary matters. Moreover, Washam was given a chance to present his side of the story at his misconduct hearing. Although Klopotoski did not launch a further investigation, he had no independent obligation to do so. Cf. Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir. 1973) (holding inmates failed to state a claim against state officials for failing to investigate or prosecute civil rights violations). Accordingly, the District Court properly granted the defendants' motion for summary judgment as to the deliberate indifference claim.

Because this appeal does not present a substantial question, we will summarily affirm the District Court's judgment. See 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6.