497 F.2d 676

**Ralph NADER et al., Appellants**

v.

**William Bart SAXBE et al.**

**No. 73–1307.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 11, 1974.

Decided April 4, 1974.

70. Appellant has argued in Part V of his brief that the rate increase here granted does not meet the standard of 43 D.C.Code § 401 (1973) that it be "reasonable, fair, and just."  We believe that the argument that the "end result" is unjust is merely an amalgam of the arguments on each of the four elements fully discussed above.  The resolution of each issue by the Commission was reasoned and based upon substantial evidence; therefore, the end result cannot be assailed.

William A. Dobrovir, Washington, D. C., with whom Andra N. Oakes, Washington, D. C., was on the brief, for appellants.

Thomas G. Wilson, Atty., Dept. of Justice, with whom Morton Hollander, Atty., Dept. of Justice, was on the brief, for appellees. William D. Appler, Washington, D. C., also entered an appearance for appellees.

Before BAZELON, Chief Judge, WRIGHT, Circuit Judge, and WYZANSKI,* Senior District Judge.

J. SKELLY WRIGHT, Circuit Judge:

Plaintiffs-appellants, a citizen of voting age and a nonprofit corporation (Public Citizen, Inc.), sought a declaratory judgment, a mandatory injunction, and an "order in the nature of mandamus" to compel the Attorney General and the United States Attorney for the District of Columbia [1] "to exercise their discretion to initiate prosecutions" against violators of the 1925 Federal Corrupt Practices Act [2] (FCPA). The District Court, in a very able opinion, found standing to sue in the plaintiffs but dismissed their complaint for failure to state a claim on which relief could be granted.[3] The court held also that the complaint was self-defeating in that it effectively admitted that the Attorney General had already exercised his prosecutorial discretion with respect to the FCPA.[4] We affirm the dismissal, but on different grounds.

I

The FCPA required candidates and committees supporting candidates for the presidency, the Senate, and the House of Representatives to file reports on campaign contributions and expenditures with the Secretary of the Senate (for Senate candidates and committees) and the Clerk of the House (for House and presidential candidates and committees).[5] Failure to do so was pun-

---

* Of the United States District Court for the District of Massachusetts, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. The complaint also named as defendants the Clerk of the House of Representatives and the Secretary of the Senate. The dismissal as to them has not been appealed. Appellee Saxbe is a successor in office to the party named in the complaint, John N. Mitchell, and to the party named in the District Court's opinion, Richard G. Kleindienst. Appellee Silbert is successor in office to Harold H. Titus, Jr., named in the complaint and in the opinion of the District Court. These substitutions have been effected automatically pursuant to Rule 43(c), Fed.R. App.P., and Rule 25(d), Fed.R.Civ.P.

2. 43 Stat. 1070 et seq., 2 U.S.C. former §§ 241–256, repealed by the Federal Election Campaign Act (FECA), Pub.L. 92–225, Title IV, § 405, Feb. 7, 1972, 86 Stat. 20.

3. Nader v. Kleindienst, D.C., 375 F.Supp. 1138, 1973 (Memorandum and Order at 6–11).

4. Id. at 11.

5. Required to report as "political committees" were all organizations accepting contributions or making expenditures designed to influence the general (not primary) election of federal candidates in two or more states. 2 U.S.C. former § 241. Financial reports were due annually on January 1, between the 1st and 10th days of March, June and September, and between the 10th and 15th

ishable by fine and/or imprisonment.[6] The FCPA was repealed and superseded by the Federal Election Campaign Act [7] (FECA), effective 60 days following the signing of the Act on February 7, 1972 (i. e., April 9, 1972), but the repeal did not eliminate criminal liability for violations of the old statute,[8] these remaining subject to prosecution until cut off by the five-year period of limitations. [9]

The complaint, filed February 8, 1972,[10] alleged that only one prosecution, a test case,[11] had ever been brought under the FCPA. Supporting its contention that more could have been brought, the complaint listed many alleged violations committed in 1964, 1966, 1968 and 1970. Plaintiffs traced nonenforcement in recent times to a policy, allegedly adopted by Attorney General Herbert Brownell in 1954 and followed by his successors in office, to exercise prosecutorial discretion only with respect to violations referred to the Justice Department by the Clerk of the House or the Secretary of the Senate. According to the complaint, such referrals were made only in November of 1968 and January of 1971; even in those years, many no-

torious violations were not referred; and the Justice Department ultimately declined to prosecute any of the referred violations.[12]

Plaintiffs claimed that the Justice Department's passivity nullified the FCPA, "fostered corruption, fraud and dishonesty in the electoral process," and deprived voters—such as plaintiff Nader —of important information about candidates for federal office.[13] Accordingly, plaintiffs sought a declaratory judgment that the "failure to exercise [prosecutorial] discretion" and the "purported delegation" of enforcement duties to clerical aides of the Congress were unlawful.[14] In addition, the complaint sought an injunction against the purported delegation and "an order in the nature of mandamus to defendants Attorney General and United States Attorney compelling them to exercise their discretion to initiate prosecutions against violators of the FCPA." [15]

## II

The District Court dismissed the complaint on two, alternate grounds. First,

---

days and on the 5th day preceding any general election. 2 U.S.C. former §§ 244 & 247. The reports were to contain the total of all contributions and details about any contribution of $100 or more. 2 U.S.C. former § 244(a)(1)–(3). Also to be detailed was any expenditure of $10 or more. 2 U.S.C. former § 244(a)(4)–(6). Similar reporting requirements applied to the candidates themselves. 2 U.S.C. former §§ 246 & 247.

6. A violation of the reporting requirements was punishable by a fine of not more than $1,000 and/or imprisonment for not more than one year, a willful violation by a fine of not more than $10,000 and imprisonment for not more than two years. 2 U.S.C. former § 252.

7. Pub.L. 92–225, 86 Stat. 3 et seq. (1972), 2 U.S.C. § 431 et seq. (Supp. II 1972). See note 29 infra.

8. The repealing statute did not provide for extinguishment of liabilities incurred under the FCPA. Accordingly, the liabilities survive repeal. 1 U.S.C. § 109 (1970)

9. 18 U.S.C. § 3282 (1970).

10. Complaint for Declaratory Judgment and Mandamus, Civil Action No. 243–72, Feb. 8, 1972.

11. United States v. Burroughs, 62 App.D.C. 163, 65 F.2d 796 (1933), affirmed, 290 U.S. 534, 54 S.Ct. 287, 78 L.Ed. 484 (1934). This case upheld the constitutionality of the statute.

12. Complaint, supra note 10, at ¶¶ 21 through 26.

13. Id. at ¶ 40.

14. Id. at ¶ 43.

15. Id. at ¶¶ 44 & 45. In addition the complaint requested that the court require the defendants to make regular reports to the court on the investigations and prosecutions undertaken to enforce the FCPA. Id. at ¶ 46. In the alternative, plaintiffs sought court appointment of special prosecutors to enforce the statute. Id. at ¶ 47.

having examined a line of precedent suggesting that prosecutorial decision-making is wholly immune from judicial review, the court concluded that

> if plaintiffs are to have any relief they must acquire it at the appellate level or through the political process.[16]

Second, the court held that the Attorney General's determination not to prosecute 1968 and 1970 violations referred by congressional personnel amounted to an exercise of discretion:

> Therefore, assuming arguendo that the court has the power to compel the defendants to exercise their discretion, it could do no more than order them to do what plaintiffs admit they have already done.[17]

We would hesitate to affirm dismissal on either of these grounds. That congressional personnel referred some violations to the Justice Department, which the Department declined to prosecute, does not necessarily imply that the Department had abandoned the allegedly unlawful policies challenged by the plaintiffs, i. e., the policy of bringing absolutely no prosecutions and the policy of delegating preliminary enforcement functions to persons outside the Executive Branch. Nor do established precedents necessarily foreclose judicial review of those policies. The instant complaint does not ask the court to assume the essentially Executive function of deciding whether a particular alleged violator should be prosecuted.[18] Rather, the complaint seeks a conventionally judicial determination of whether certain fixed policies allegedly followed by the Justice Department and the United States Attorney's office lie outside the constitutional and statutory limits of "prosecutorial discretion." [19]

16. Nader v. Kleindienst, *supra* note 3, Memorandum and Order at 11.

17. *Id.*

18. The federal courts have customarily refused to order prosecution of particular individuals at the instance of private persons. *E. g.*, Inmates of Attica Correctional Facility v. Rockefeller, 2 Cir., 477 F.2d 375 (1973) ; Peek v. Mitchell, 6 Cir., 419 F.2d 575 (1970) ; Newman v. United States, 127 U.S.App.D.C. 263, 382 F.2d 479 (1967) ; Smith v. United States, 5 Cir., 375 F.2d 243, cert. denied, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967) ; Powell v. Katzenbach, 123 U.S.App.D.C. 250, 359 F.2d 234 (1965), cert. denied, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966) ; United States v. Cox, 5 Cir., 342 F.2d 167, cert. denied, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965) ; Moses v. Kennedy, D.D.C., 219 F. Supp. 762 (1963), affirmed, 119 U.S.App.D. C. 352, 342 F.2d 931 (1965) ; Parker v. Kennedy, S.D.N.Y., 212 F.Supp. 594 (1963) ; Pugach v. Klein, S.D.N.Y., 193 F.Supp. 630 (1961) ; Milliken v. Stone, S.D.N.Y., 7 F.2d 397 (1925), affirmed, 2 Cir., 16 F.2d 981, cert. denied, 274 U.S. 748, 47 S.Ct. 764, 71 L.Ed. 1331 (1927) ; United States v. Woody, D.Mont., 2 F.2d 262 (1924). To mandamus a particular prosecution, a court would have to determine that no legitimate consideration informed the prosecutor's decision not to prosecute the individual in question. Such a determination would normally be very difficult, for a prosecutor may lawfully take account of many factors other than probable cause in making such decisions. *See* Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962) ; Inmates of Attica Correction Facility v. Rockefeller, *supra*, 477 F.2d at 380 ; Newman v. United States, *supra*, 127 U.S.App.D.C. at 264–265, 382 F.2d at 480–481 ; Smith v. United States, *supra*, 375 F.2d at 247 ; Pugach v. Klein, *supra*, 193 F.Supp. at 634–635. That the balancing of these permissible factors in individual cases is an executive, rather than a judicial, function follows from the need to keep the courts as neutral arbiters in the criminal law generally, *see* In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), *and* Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950), and from Art. II, § 3 of the Constitution, which charges the President to "take Care that the Laws be faithfully executed," *see* Inmates of Attica Correctional Facility v. Rockefeller, *supra*, 477 F.2d at 379–380 ; Newman v. United States, *supra*, 127 U.S. App.D.C. at 264 & 266, 382 F.2d at 480 & 482 ; United States v. Cox, *supra*, 342 F.2d at 171 ; Goldberg v. Hoffman, 7 Cir., 225 F.2d 463, 465 (1955).

19. The Executive's constitutional duty to "take Care that the Laws be faithfully executed," Art. II, § 3, applies to all laws, not merely to criminal statutes, *see* In re Neagle, 135 U.S. 1, 63–64, 10 S.Ct. 658, 34 L.Ed. 55 (1890). It would seem to follow that the exercise of prosecutorial discretion, like the exercise of Executive discretion generally, is

Dismissal was nevertheless proper, for plaintiffs lack standing to sue. To hold this status, a litigant must show that he has sustained or will sustain an injury in fact,[20] that his situation comes within a "zone of interest" arguably protected by the statute in question,[21] and that a "logical nexus" links the injury in fact to the governmental action sought or challenged.[22] Plaintiffs adequately alleged as injury in fact the lack of election campaign information forthcoming under the FCPA.[23] Plaintiffs would also appear to be in the "zone of interest" protected by the FCPA.[24] But there is no longer a logical nexus between the injury and the relief sought.[25] Plaintiffs do not seek any relief, e. g., damages, for injuries already inflicted upon them by the allegedly unlawful policies of the Justice Department. Rather, they ask only prospective relief, i. e., declaratory judgment, mandatory injunction, and an order in the nature of mandamus. *See* Diffenderfer v. Central Baptist Church, 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972). Such relief will not remedy plaintiffs' injuries, for it will not generate any campaign information. Enforcement of the FCPA, while still possible with respect to past violators, can

subject to statutory and constitutional limits enforceable through judicial review. *See* National Railroad Passenger Corp. v. National Assn of Railroad Passengers, 414 U.S. 453, 465, 94 S.Ct. 690, 38 L.Ed.2d 690 (1974) (Mr. Justice Brennan, concurring); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); Confiscation Cases, 74 U.S. (7 Wall.) 454, 457, 19 L.Ed. 196 (1868); Newman v. United States, *supra* note 18, 127 U.S.App.D.C. at 266, 382 F.2d at 482 (Chief Judge Bazelon, concurring); Powell v. Katzenbach, *supra* note 18, 123 U.S.App.D.C. at 251, 359 F.2d at 235. The law has long recognized the distinction between judicial usurpation of discretionary authority and judicial review of the statutory and constitutional limits to that authority. *See* McGrath v. Kristensen, 340 U.S. 162, 169, 71 S.Ct. 224, 95 L.Ed. 173 (1950); Perkins v. Elg, 307 U.S. 325, 349–350, 59 S. Ct. 884, 83 L.Ed. 1320 (1939); Medical Committee for Human Rights v. SEC, 139 U.S.App.D.C. 226, 242, 432 F.2d 659, 675 (1970), vacated and remanded for dismissal on grounds of mootness, 404 U.S. 403, 92 S. Ct. 577, 30 L.Ed.2d 560 (1972); United States ex rel. Schonbrun v. Commanding Officer, Armed Forces, 2 Cir., 403 F.2d 371, 374 (1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969). Judicial review of the latter sort is normally available unless Congress has expressly withdrawn it. Barlow v. Collins, 397 U.S. 159, 167, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Abbott Laboratories v. Gardner, 387 U.S. 136, 140–141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 395–396, 428 F.2d 1093, 1097–1098 (1970).
[T]he decisions of this court have never allowed the phrase "prosecutorial discretion" to be treated as a magical incantation which automatically provides a shield for arbitrariness.
Medical Committee for Human Rights v. SEC, *supra*, 139 U.S.App.D.C. at 240, 432 F.2d at 673. *See generally* Note, The Special Prosecutor in the Federal System: A proposal, 11 Am.Crim.L.Rev. 577 (1973); K. Davis, Discretionary Justice (1969).

20. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166–167, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Sierra Club v. Morton, 405 U.S. 727, 738, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); Assn of Data Processing Service Organizations v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

21. Assn of Data Processing Service Organizations v. Camp, *supra* note 20, 397 U.S. at 153, 90 S.Ct. 827, 25 L.Ed.2d 184.

22. Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

23. Plaintiff Nader, as a voter, has indisputably suffered this injury. He is associated with the plaintiff corporation. We need not explore whether the corporation as a distinct entity suffered a judicially cognizable injury from the absence of campaign information. *See generally* Sierra Club v. Morton, *supra* note 20.

24. Appellees concede that providing campaign information to voters was an important objective of the 1925 legislation.

25. Our analysis might be different if Congress had conferred on persons such as plaintiffs the power to challenge in the courts the Justice Department's policies in enforcing the FCPA. *See* Linda R. S. v. Richard D., 410 U.S. 614, 617 & n. 3, 93 S.Ct. 614, 35 L.Ed.2d 536 (1973).

no longer induce compliance with the Act's reporting requirements, for the Act has been repealed.

■ Since the District Court's opinion, the Supreme Court has emphasized that the nexus issue must receive close scrutiny where, as here, victims or potential victims of criminal acts sue to correct allegedly unlawful prosecutorial conduct. Linda R. S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973).[26] We do not read Linda R. S. to preclude standing in all such suits,[27] but the case before us is peculiarly weak. Concededly, at the time the complaint was filed—59 days before the effective date of the repeal legislation—it was not unreasonable to suppose that the relief sought would so alter enforcement of the FCPA as to induce compliance during the final—March 1972—reporting period. The ensuing flow of campaign information would have remedied plaintiffs' injury. Such a plausible chain of effects often meets the nexus requirement for standing.[28] But, on April 9, 1972, months before the District Court's decision was rendered, the chain was broken by effective repeal of the FCPA. A change now in Justice Department policies would not stimulate a flow of pre-April 9, 1972 information, for past violators of the FCPA cannot escape statutory liability by making tardy disclosure. Nor would a change of policies with respect to the FCPA have an adequate nexus with the future flow of campaign information. Repeal has terminated any duty to comply with the FCPA, and the new statute is so different in substance and procedure[29] that

---

**26.** Cf. O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

**27.** In Linda R. S., the mother of an illegitimate child sued to enjoin "discriminatory application" by Texas law enforcement authorities of a state statute imposing criminal liability for breach of child support duties. The authorities enforced the statute only against fathers of legitimate children, which practice the plaintiff alleged to be in violation of the Equal Protection Clause. The Court held "that, in the unique context of a challenge to a criminal statute appellant has failed to allege a sufficient nexus between her injury and the government action which she attacks to justify judicial intervention." Linda R. S. v. Richard D., supra note 25, 410 U.S. at 617–618. In a broad dictum the Court stated "that, in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Id. at 619. But this dictum should probably be read against the factual backdrop of the case. The plaintiff was interested in having the father of her child punished. Thus her complaint in effect sought a judicial order compelling prosecution of a particular individual, a practice shunned by American courts. See notes 18 & 19 supra. As the Court emphasized, it was this focus on prosecution of a particular individual that destroyed the "logical nexus" necessary for standing:

> Thus, if appellant were granted the requested relief, it would result only in the jailing of the child's father. The prospect that prosecution will, at least in the fu-

ture, result in payment of support can, at best, be termed only speculative.

Id. at 618. In finding "only speculative" the possibility that a particular person once jailed will pay child support after his release, the Court did not necessarily classify as speculative the possibility that improved enforcement of a statute would increase compliance by the generality of those subject to it. Thus one injured by a general noncompliance, rather than by the noncompliance of a particular individual, might still have standing to challenge the deficient enforcement policy responsible for the noncompliance.

Also, the Court in Linda R. S. was careful to note that the law enforcement policy there challenged could be adequately tested in the courts by an Equal Protection "defense" to a prosecution charging the father of a legitimate child with nonsupport. Id. at 619 n. 5. No such alternate remedy exists where the policy under challenge is one of bringing absolutely no prosecutions.

**28.** See Diggs v. Shultz, 152 U.S.App.D.C. 313, 470 F.2d 461 (1972), cert. denied, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973).

**29.** The FECA requires reports concerning all federal elections and nominating conventions, not just general elections. 2 U.S.C. §§ 431(a) & 437. The new Act expands the definition of political committees to include any organization receiving contributions or making expenditures exceeding $1,000 a year, 2 U.S.C. § 431(d), but particularized

we cannot fairly predict that enforcement of the FCPA would induce compliance with it.[30] Consequently, so far as standing is concerned, events have mooted this case.[31]

Affirmed.

accounting is necessary only for contributions and expenditures over $100. The new Act expressly imposes supervisory responsibilities on the Secretary of the Senate, the Clerk of the House, and, for presidential elections, the Comptroller General of the United States, 2 U.S.C. §§ 431(g) & 438. Provision is made for private persons to file complaints with these officials, and when these officials believe a violation has occurred, the Attorney General "shall" bring suit to enjoin it, 2 U.S.C. § 438(d). Finally, the new Act reduces criminal penalties for all violations to maximum fines of $1,000 and/or imprisonment for not more than one year, 2 U.S.C. § 441.

30. This is not to say the plaintiffs are without standing to challenge policies adopted by the Justice Department to enforce the FECA, or that the policies followed with respect to the FCPA would be irrelevant to an assessment of the merits of such a challenge. Consideration of these issues must await another case.

31. Standing is an element of a litigation's status as a "case or controversy" under Article III of the Constitution, Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Though present at the time a complaint is filed, such status may nonetheless be lost by force of subsequent events. See Spomer v. Littleton, 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974); Diffenderfer v. Central Baptist Church, 404 U.S. 412, 92 S. Ct. 574, 30 L.Ed.2d 567 (1972); Medical Committee for Human Rights v. SEC, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed. 560 (1972).