INSLAW, INC., Petitioner,

v.

Dick THORNBURGH, as Attorney General of the United States, and United States Department of Justice, Respondents.

Civ. A. No. 89–3443 (WBB).

United States District Court, District of Columbia.

Sept. 27, 1990.

Elliot Lee Richardson, Milbank, Tweed, Hadley & McClay, Charles Robert Work, McDermott, Will & Emery, Washington, D.C., for petitioner.

Stuart M. Gerson, Asst. Atty. Gen., Vincent M. Garvey, Vaughan Finn, U.S. Dept. of Justice, Civil Div., Washington, D.C., for respondents.

## MEMORANDUM

BRYANT, Senior District Judge.

INSLAW, Inc. petitions for a writ of mandamus, pursuant to 28 U.S.C. § 1361, to compel the Attorney General to conduct a criminal investigation of allegations that former high-level officials of the Department of Justice conspired to injure petitioner, INSLAW, and appropriate its software for personal benefit. Respondents, the Attorney General and the United States Department of Justice ("DOJ"), move to dismiss the petition under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure on the grounds that the court lacks subject matter jurisdiction over INSLAW's claims, since INSLAW lacks standing to compel the Attorney General to undertake an investigation of its claims, and the petition fails to state a claim upon which relief can be granted.

BACKGROUND

INSLAW is a case-management software company founded and managed by William A. and Nancy Hamilton. In an action brought in the United States Bankruptcy Court for the District of Columbia INSLAW charged the Department of Justice with "unlawfully attempting to destroy INSLAW and take over its case management software." Memorandum of Law in Sup-

port of INSLAW's Petition for a Writ of Mandamus at 2. In that action, the bankruptcy court found, *inter alia*, that Department officials fraudulently induced IN-SLAW into providing its proprietary enhancements to DOJ in willful violation of the automatic stay entered at the time that INSLAW filed for reorganization under Chapter 11 of the Bankruptcy Code, *In re INSLAW, Inc.*, 83 B.R. 89, 168–69 (Bankr. D.D.C.1988). The bankruptcy court awarded INSLAW $6.8 million in damages, as well as over $1 million in attorneys' fees, in a subsequent hearing. After reducing the damages award by $655,200, on November 22, 1989, this court affirmed the ruling of the bankruptcy court. 113 B.R. 802. On January 19, 1990, DOJ filed a notice of appeal.

In addition to the claims brought before the bankruptcy court, INSLAW filed a series of claims against the Department of Justice before the Department of Transportation's Board of Contract Appeals ("DOTBCA") alleging that the Department has improperly withheld monies due IN-SLAW under the software contract between the parties.[1] Moreover, INSLAW's conspiracy theory has been the subject of investigations by the Senate Committee on

Governmental Affairs, the Permanent Subcommittee on Investigations, where no proof of conspiracy was found, but where it was, nevertheless, determined that "the Department's failure to follow standard procedures ..., coupled with its lack of concern over the potential for conflict of interest ..., indicates a breakdown in the Department's mechanism for accountability[,] ... seriously undercut[ting] the Department's integrity in the public eye.".[2] Staff of Senate Comm. on Governmental Affairs, 101st Cong., 1st Sess., Allegations Pertaining to the Department of Justice's Handling of a Contract with INSLAW, Inc. (Comm.Print 1989), at 50–51 ("Staff Study").

Beginning in February, 1988, the Hamiltons submitted a written statement to the Public Integrity Section of the Department of Justice Criminal Division ("the Section") "setting forth their reasons for believing that the combination of high-level hostility and low-level vindictiveness could not sufficiently account for the persistence and tenacity of the attempts to gain control of INSLAW's software." Petitioner's Memorandum in Opposition to Respondents' Motion to Dismiss the Petition for a Writ of Mandamus at 4. The Hamiltons, rather,

---

**1.** The Department of Justice maintains that this new case before the DOTBCA "focuses on IN-SLAW's claims that the actions allegedly taken by the Department to injure INSLAW were instigated by former top-level officials of the Department, who conspired for the purpose of appropriating INSLAW's software," Memorandum in Support of Respondents' Motion to Dismiss IN-SLAW's Petition for a Writ of Mandamus at 2; hence permitting discovery into the motives of various DOJ officials, which would be necessary for a determination of a conspiracy. Petitioners, however, argue, that such action does not support discovery into DOJ's "motives for withholding payments due to INSLAW." Petitioner's Memorandum in Opposition to Respondents' Motion to Dismiss the Petition for a Writ of Mandamus at 31. In fact, INSLAW contends that in this proceeding it has been denied access to any discovery in DOTBCA bearing on government conduct or motives. The Department of Justice has not refuted this contention.

**2.** As can be anticipated, the respondent speaks to the thoroughness of the Senate Staff's investigation encompassing the review of "a large volume of factual material presented by William Hamilton," Memorandum in Support of Respondents' Motion to Dismiss INSLAW's Petition for a Writ of Mandamus at 9, "tens of thousands of pages of documents" and the interviews and depositions of "over 50 individuals," including "bankruptcy officials; current and former Justice Department employees; representatives of INSLAW; Congressional Staff members; former and present GAO personnel; AT & T employees; Los Angeles County, California, employees; Alameda County, California, employees; former and present employees of Hadron, Inc.; Dickstein, Shapiro, & Morin law firm partners; sitting U.S. District Court judges; and various others." Staff Study at 15. Petitioner, on the other hand, cites to the study's finding that "[t]he Staff's attempt to conduct a free, full, and timely investigation was hampered by the Department's lack of cooperation," learning, in addition, that there were a number of employees of the DOJ who desired to speak to the Subcommittee, "but who chose not to out of fear for their jobs." *Id.* at 39, 46. INSLAW, further, cites to "[o]ther examples of the Department's obstruction of the Subcommittee's investigation." Petitioner's Memorandum in Opposition to Respondents' Motion to Dismiss the Petition for a Writ of Mandamus at 6, n. 4.

attributed the Department's purported attempt to wrest control of INSLAW's software away from them to a "conspiracy among friends of [then] Attorney General Meece." *Id.* On June 18, 1989, the Section notified INSLAW that it had completed its investigation of the Hamiltons' allegations and that prosecution had been declined, due to lack of evidence of criminality.

INSLAW also asked the Justice Department to appoint an independent counsel under the Ethics in Government Act to investigate its charges. That request was denied on May 4, 1988; and on September 8, 1989 the Special Division of the Court of Appeals denied INSLAW's appeal from the Department's decision not to appoint a special prosecutor for lack of jurisdiction, determining *inter alia* that INSLAW had no standing to contest DOJ's decision. *In re INSLAW*, 885 F.2d 880, 882–83 (D.C.Cir. 1989).[3] In addition, INSLAW's allegations of wrongdoing were once again explored by the Senate during confirmation hearings of D. Lowell Jensen, concerning his nomination for United States District Judge for the Northern District of California, in which he was required to respond to questions regarding his role in the administration of the INSLAW contract. Staff Report at 5–6 and Appendix B thereto. Mr. Jensen's appointment was subsequently confirmed.[4] Presently, the Staff of the House Judiciary Committee is considering INSLAW's claims of conspiracy, illegality, and conflict of interest.

INSLAW argues that the Department of Justice failed in its "duty to be fair," Memorandum of Law in Support of INSLAW's Petition for a Writ of Mandamus at 14–17 and "duty to investigate," *id.* at 17–20, when it failed to conduct "a comprehensive, thorough, or credible investigation," Petition for Mandamus, at 9, ¶ 16, and conclud-

ed that there was no evidence of criminality. Petitioner asserts, and respondents do not deny, that the Section contacted only one of the many persons who furnished information on which the allegations made in INSLAW's petition were based, Exhibits B, Affidavit of William Hamilton, and C, Letter to Attorney General Thornburgh, directed to the Criminal Division's investigation—failing even to interview the Hamiltons. *Id.* at 9–10, ¶ 16. It is further alleged that DOJ made no attempt "to obtain relevant documents, correspondence, notes, appointment calendars, or telephone logs from any of the individuals or entities identified in Exhibit B." *Id.* The harm INSLAW alleges that flows from the "Department's neglect of its duty of fairness," Memorandum of Law in Support of INSLAW's Petition for a Writ of Mandamus at 12, is threefold: (1) requiring INSLAW "to expend substantial amounts of money and other corporate resources litigating its civil claims against the Department;" (2) causing INSLAW "to lose important business opportunities by delaying the vindication of INSLAW's performance under its contract with the Department;" (3) forcing INSLAW "to devote a vast amount of time, money, and energy to investigative efforts which the Department itself should have conducted and to which the Department could have brought far more adequate investigative resources." *Id.* Hence, INSLAW argues that this economic harm "fairly traceable to the [respondents'] allegedly unlawful conduct[, which is] likely to be redressed by the requested relief," *id.* at 13 (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556, *reh'g denied*, 468 U.S. 1250, 105 S.Ct. 51, 82 L.Ed.2d 942 (1984)) is sufficient to confer standing on the petitioners.

It is, however, the Department's position that this court lacks jurisdiction over the

---

**3.** The court noted that the Department of Justice "conducted a thorough review of the allegation in conformance with the Independent Counsel Act...." *In re INSLAW*, 885 F.2d 880, 881 (D.C.Cir.1989).

**4.** Respondents maintain that during the hearings to confirm the appointment of Arnold Burns to succeed Mr. Jensen as Deputy Attorney General, "Mr. Burns provided assurances that

he would familiarize himself with the INSLAW matter, consider the possibility of an amicable settlement, and take precautions to ensure that similar controversies were avoided in the future." Memorandum in Support of Respondents' Motion to dismiss INSLAW's Petition for a Writ of Mandamus at 12, n. 6 (citing Staff Report at 7–8) (quotation found at 6).

**4**

claim because INSLAW lacks standing to compel the Attorney General to undertake an investigation of its claims. Furthermore, the decision of a prosecutor, the Justice Department, in this case, not to initiate or pursue a criminal proceeding is an unreviewable determination, committed to the discretion of the Executive Branch. Moreover, DOJ argues that even if the court decides that it does have jurisdiction, the petition must, nevertheless, be dismissed, since it fails to satisfy any of the elements for the issuance of the "drastic" and "extraordinary" remedy of a writ of mandamus. Memorandum in Support of Respondents' Motion to Dismiss INSLAW's Petition for a Writ of Mandamus at 4 (citing *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 189–90, 66 L.Ed.2d 193 (1980)). It is urged that this conclusion must be reached because DOJ does not possess a "plainly defined and nondiscretionary duty," *Ganem v. Heckler,* 746 F.2d 844, 852 (D.C.Cir.1984), to conduct an additional investigation of INSLAW's claims, which, if pursued to INSLAW's satisfaction would not necessarily provide any redress for petitioner's alleged injuries. Additionally, petitioner has alternative means of obtaining relief from the allegedly illegal actions of the Justice Department. Finally, the Department argues that judicial intervention in such an instance implicates serious separation of powers concerns, particularly as to INSLAW's request that the DOJ be required to provide status reports to the court regarding the progress and final results of the investigation.

DISCUSSION

A. *Standing*

 Article III of the Constitution defines the limits of its jurisdiction to the resolution of "cases" and "controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982). As an incident to the elaboration of this bedrock requirement, the Court has always required that a litigant have "standing," a term which "subsumes a blend of constitutional requirements and prudential considerations." *Id.*

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," ... and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision".... In this manner does Art. III limit the federal judicial power "to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process."

*Id.* at 472, 102 S.Ct. at 758 (citations and footnotes omitted). Hence, the Court has consistently interpreted this constitutional requirement as being "built on a single basic idea—the idea of separation of powers." *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). With this in mind, the Court has prescribed that the injury alleged must be "distinct and palpable," *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979) (quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)), and the relief must be " 'likely' to follow from a favorable decision." *Allen v. Wright,* 468 U.S. at 751, 104 S.Ct. at 3324–25. Judicial examination of the complaint's allegation will, therefore, necessitate the resolution of various questions which will serve to

> ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?

*Id.* at 752, 104 S.Ct. at 3325.

As to these two requirements, petitioner immediately encounters difficulty. The injuries that are alleged by INSLAW to have

resulted from the lack of a fair and full investigation into the Department's wrongdoing, *supra*, at 6, although traceable to this challenged action, suffer under the constraint that the causal link between the plaintiff's injury and the defendants' enforcement decision cannot be deemed speculative. *See McCollum v. Smith*, 596 F.Supp. 165 (D.D.C.1984). Addressing this very situation, the Court has held that "the bare existence of an abstract injury meets only the first half of the standing requirement." *Linda R.S. v. Richard D.*, 410 U.S. 614, 618, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973) ("[P]rior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted or threatened with prosecution.") "The party who invokes [judicial] powers must be able to show ... that he has sustained or is immediately in danger of sustaining some *direct* injury *as the result of* [the defendants' wrongful acts]." *Id.* at 618, 93 S.Ct. at 1149 (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923)) (emphasis in original).

Contrary to INSLAW claims that the Public Integrity Section's failure to conduct a more thorough, credible investigation has caused INSLAW to lose business opportunities, it is rather the 1983 contract disputes with the DOJ—and that which followed—which have given rise to such harm.[5] Moreover, if INSLAW's injury can be fairly described as the expenditure of "substantial amounts of money and other corporate resources" in the litigation of its civil claims against the Department, Memorandum of Law in support of INSLAW's Petition for a Writ of Mandamus, at 12, the court is of the opinion that the DOJ cannot be held, in these circumstances, accountable for such expenditure (and is under no duty of mitigation) and therefore, such purported injury, is not judicially cognizable.

Even more problematic for the petitioner is the "redressability" requirement. Since this court is not free to conclude that a

more thorough investigation conducted by the Public Integrity Section of the Department of Justice Criminal Division would have found the Department culpable of the conspiracy and the pervasive illegality alleged by petitioner, it is merely speculative that such investigation would foreclose the necessity of INSLAW spending its own funds and time investigating its claim against the Justice Department. Likewise, a vindication of INSLAW would not necessarily result in substantial reduction of resources with regard to its civil claims against DOJ, since it is not altogether clear to this court that even if the Section had conducted such an investigation all of its information so gathered would have been or should be made available to the petitioner. In this case, "the logical nexus between the injury and the relief sought," *Nader v. Saxbe*, 497 F.2d 676, 680 (1974) (footnote omitted) (No logical nexus between injury and relief where plaintiffs-appellants sought to compel the government to initiate prosecutions against violators of the 1925 Federal Corrupt Practices Act), is too attenuated. Therefore, it appears to the court that petitioner lacks standing to petition the court for an order compelling DOJ to undertake an investigation.

### B. *Prosecutorial Discretion and Separation of Powers*

██ The respondents argue that the court lacks subject matter jurisdiction over INSLAW's petition for the additional reason that the decision of a prosecutor not to undertake a criminal investigation is an unreviewable determination that is committed to the discretion of the Executive; and the doctrine of separation of powers, therefore, forecloses INSLAW's action. Memorandum in Support of Respondents' Motion to Dismiss INSLAW's Petition for a Writ of Mandamus at 21–22.

In general, the Court has held that an agency's decision not to take enforcement action should be presumed immune from judicial review.... For good rea-

---

5. Petitioner speaks to delayed vindication of IN- SLAW's performance under contract. This contention alone cannot be substantiated, since the

bankruptcy court did, in fact, remove any doubt as to whether INSLAW was at all responsible for the contract's failure.

sons, such a decision has traditionally been "committed to agency discretion...." [T]he presumption may be rebutted where [a] substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers.

*Heckler v. Chaney*, 470 U.S. 821, 832–33, 105 S.Ct. 1649, 1656–57, 84 L.Ed.2d 714 (1985).[6] In this regard, an agency's refusal to institute proceedings shares some of the characteristics of the decision of a prosecutor in the Executive Branch not to indict— "a decision which has long been regarded as the special province of the Executive Branch"—charged by the Constitution to "take Care that the Laws be faithfully executed." U.S. Const., Art. II, § 3. *Id.* at 832, 105 S.Ct. at 1656. *See also Powell v. Katzenbach*, 359 F.2d 234 (1965) *cert. denied* 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966) ("It is well settled that the question of whether or when prosecution is to be instituted is within the discretion of the Attorney General. Mandamus will not lie to control the exercise of this discretion.") Returning, once again, to the basic structure of this government, with its intricate system of checks and balances, the Court has concluded:

> The danger that agencies may not carry out their delegated powers with sufficient vigor does not necessarily lead to the conclusion that courts are the most appropriate body to police this aspect of their performance. That decision is in the first instance for Congress....

*Heckler v. Chaney*, 470 U.S. at 834, 105 S.Ct. at 1657.

Likewise, this court concludes that these same concerns underlie its determination in this case that the court lacks jurisdiction to review the Department's alleged failure to conduct a full, fair investigation. The court is not unmindful that the Department's seemingly cursory investigation smacks of the possibility of conflict of interest. Nevertheless, INSLAW has cited no substantive statutes that would serve to rebut the presumption that prosecutorial discretion is immune from judicial review. While the court is also hesitant to endorse, without more, absolute propositions (the unreviewability of prosecutorial discretion), it cannot agree with the petitioner that "differences of degree ... overcome the normal reluctance of a court to take jurisdiction in prosecutorial situations." Petitioner's Memorandum in Opposition to Respondents' motion to Dismiss the Petition for a Writ of Mandamus at 9.

It is true that in *Nader v. Saxbe*, 497 F.2d at 679 the Circuit established the principle that judicial review of prosecutorial *policies*, which "lie outside the constitutional and statutory limits of 'prosecutorial discretion'" is not automatically foreclosed. *See also National Association for the Advancement of Colored People v. Levi*, 418 F.Supp. 1109, 1116–1117 (1976) (General policy of DOJ to defer to state criminal investigations rather than its own affirmative and objective investigation when an individual's constitutional and civil rights had been violated by state officials is reviewable). Petitioner, however, has provided no evidence of any such enforcement policy undertaken by the Department of Justice. Furthermore, the court is not of the opinion that whatever harm INSLAW suffered at the hands of the Public Integrity Section of the Criminal Division has risen to the level of a constitutional violation, and therefore is sufficient to overcome this presumptive validity accorded the decision

---

**6.** The Court has, in large part, attributed the presumption of unreviewability of an agency or prosecutor's decision to refuse enforcement or to indict "to the general unsuitability for judicial review" of such decisions. *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714. Primary among the reasons for this general unsuitability, is the fact that an agency decision not to enforce often involves a complicated balancing of a number of factors, such as resource allocation and overall policy considerations. *Id.*

In addition to these administrative concerns, ... when an agency refuses to act it generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect. Similarly, when an agency *does* act to enforce, that action itself provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner.

*Id.* at 832, 105 S.Ct. at 1656 (emphasis in original).

of a prosecutor not to undertake a criminal investigation.[7] Accordingly, this is another reason why this court concludes that it has no jurisdiction to review the Department of Justice's determination of 'no evidence of conspiracy' and its decision not to prosecute.[8]

CONCLUSION

Upon consideration of the foregoing, the Petition for a Writ of Mandamus is dismissed.

7. Particularly as to INSLAW's request for periodic and final reports, the court, in agreement with the respondents, determines that the casting of the court in the role of a 'super-prosecutor' transgresses prudential considerations and implicates the court unlawfully in activities fairly assigned to the Executive Branch.

8. Petitioner's writ of mandamus would have encountered difficulty for many of the same reasons that this court has determined that it does not have subject matter jurisdiction, i.e. that the Justice Department has no ministerial duty to undertake an investigation at the request of INSLAW. *Ganem v. Heckler*, 746 F.2d 844, 852 (D.C.Cir.1984) reiterates the three criteria that must be met for a writ of mandamus to properly issue: (1) a clear right to the relief sought; (2) a plainly defined and nondiscretionary duty on the part of the defendant to honor that right; and (3) the existence of no other adequate remedy, either administrative or judicial. In this regard, clearly INSLAW has had and continues to have alternate avenues of relief against the Department. Importantly, the House Judiciary Committee is presently investigating the activities of the Department and its then-officials, employees, and friends as to the existence of a conspiracy of the type and magnitude alleged by INSLAW. The Washington Post reports that "[a]fter months of negotiations, Attorney General Dick Thornburgh has now assured the Judiciary Committee chairman Jack Brooks (D–Tex.) that his inquiry will have the full cooperation of the department. Committee investigators will have direct access to department personnel and documents, and employees will be assured that they can testify without fear of retribution." "Mr. Thornburgh Cooperates," The Washington Post, April 28, 1990, at A22. Clearly, this house committee is a body far better placed in the governmental scheme of things than the court (with resources unmatched in the judiciary) to undertake such an evaluation.